## 67044. BOYD v. THE STATE.

QUILLIAN, Presiding Judge.

Tried with his codefendant Register, defendant appeals his conviction for burglary, armed robbery, theft by taking, possession of marijuana and carrying a concealed weapon. *Held:*

1. The general grounds are asserted.

The evidence authorized the jury to find as follows: Ann Johnson was a married woman who lived alone with her small child in a rural area. Her husband was in prison in Florida for drug smuggling. On December 23, 1982 Johnson had her sister-in-law and two male friends visit her home for several hours, during which cocaine, marijuana and alcohol were consumed, with the cocaine supplied by one of the males. Johnson, who admitted using cocaine for 4 or 5 years, also admitted taking cocaine once that evening but denied using marijuana or alcohol. The two men left about midnight. The sister-in-law left about a half hour later, taking Johnson's car and leaving her own car, a yellow Pontiac Firebird. When all had left, Johnson laid down on the bed in her darkened bedroom with the child. After a short time she heard someone come into the unlocked house. A man came into her bedroom and held a gun to her head. He

had a flashlight and asked Johnson if she could see the gun. Later he threatened to kill her. The man held her face down on the bed, handcuffed her hands behind her and put a strip of gray duct tape over her eyes. She was then ordered into the living room which was illuminated. She became aware that there was another man present. This second man referred to the first man as John. They wanted to know where her drug "stash" was. By tilting her head back she was able to see under the tape across her eyes and get a look at the faces of the two men and how they were dressed. The first man had the gray tape on his cheeks and forehead and was wearing a wool cap. The second man had a scraggly beard. Both were wearing what appeared to her to be shirts of red and blue flannel, with blue backs. While the second man stayed with Johnson, the first man rummaged through the house and she believed several things were taken. The men remained in the house for at least a half hour. Then they tied Johnson's feet together and, after demanding the keys, left in the yellow Firebird. Johnson managed to free her feet and call her father-in-law, who lived nearby. The police were called and when they arrived Johnson informed them she had been robbed by two white men who had left in the Firebird. She was released from the handcuffs, and the police put out a lookout for the Firebird and the two men. Johnson also had called her sister who lived some distance away, and the sister, on the way to Johnson's house, saw the Firebird standing in the road near a white pickup truck and a person get out of the car and into the truck. When the sister reported this to the police, the lookout was changed to two white males in a white pickup with a tool box on the back. Shortly thereafter, Quitman police reported by radio that they had stopped a white pickup meeting the description carrying two white males and a white female. The police officers searched the truck and an open overnight bag in the back of the truck finding numerous things, including several pistols, and laid the items they found on the hood of the police car. They placed the handcuffed occupants of the pickup inside the police car. A loaded pistol was found in the defendant's pocket. Johnson was brought to the scene of the apprehension, recognized some of the items displayed on the car hood, and identified the two men apprehended, defendant Larry Boyd and codefendant John Register, as the persons who had entered her house and robbed her. Johnson then identified other items on the car hood as property taken from her house. A subsequent search at the jail produced Johnson's husband's ring from one of the men and some marijuana from both of them.

As to the robbery, burglary and theft, proof of which rests primarily on Johnson's testimony, defendant argues that the evidence is insufficient because her testimony is incredible.

Johnson's testimony was attacked by showings of some prior inconsistency and conflict with the testimony of others, but her testimony as to what occurred during the burglary and robbery was substantially consistent and uncontradicted except for the defendants' denials that they were present. We cannot say, however, that her testimony was incredible as a matter of law or that it should be disregarded.

Where a defendant seeks reversal on the general grounds, "the only question presenting itself to the appellate court is whether there is sufficient evidence to support the verdict. [Cit.] It is the function of the jury, not the appellate court, to determine the credibility of witnesses and weigh any conflicts in the evidence. The appellate court views the evidence in a light most favorable to the jury's verdict . . . [Cits.] *Laws v. State,* 153 Ga. App. 166 (1) (264 SE2d 700).

From our review of the evidence we find that "*any* rational trier of fact could have found the essential elements of the crime(s) beyond a reasonable doubt." Jackson v. Virginia, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560).

2. Error is alleged because the trial court permitted evidence of Johnson's identification of defendant at the scene of his apprehension by the Quitman police.

As indicated above, Johnson testified that she was able to look under the tape over her eyes while the men were in her house and get a view of their faces. Before she saw them at the place of apprehension, she knew that two white men were in custody. When she arrived there, she recognized some items taken from her house on the hood of the car, and then identified defendant and Register as the two men who had come into her house. Johnson testified that she did not know the two men but may have seen one or the other of them in a bar or other places she frequented with friends who knew the defendants. Both defendants testified that Johnson knew them and Register claimed to have known her intimately.

Defendant contends that his identification by Johnson was unnecessarily suggestive with a substantial likelihood of misidentification, because with the tape on her eyes she could not have seen very well the men who were in her house; because she knew both of them before the incident; because one of the men was partially disguised by tape on his face; because Johnson was under the influence of drugs and alcohol; because her descriptions of what they looked like in the house and at the place of apprehension were different; and because the procedures leading up to the identification were unnecessarily suggestive.

The show-up was conducted as soon as possible after the offenses were committed and the defendants apprehended. Johnson

testified that she recognized the two defendants by their faces from what she had seen under the tape over her eyes. They were present in her house for at least 30 minutes. She identified the jackets they were wearing when apprehended as the red and blue flannel shirts with blue backs she saw on them in her house. She also identified items from their pickup as property taken from her house.

From the circumstances we conclude that the show-up was not unnecessarily suggestive nor was there a likelihood of misidentification. Neil v. Biggers, 409 U. S. 188 (93 SC 375, 34 LE2d 401). " '(The identification) was an "immediate product of the offense and defendant's apprehension." Hence, "practicalities inherent in this type of situation suggest that an immediate on-the-scene confrontation between victim and suspect is essential both to law enforcement and to fairness toward innocent suspects." [Cit.]' [Cit.]" *Brown v. State,* 161 Ga. App. 55 (2), 56 (289 SE2d 9). See, *Hamilton v. State,* 162 Ga. App. 116 (2) (290 SE2d 478); *Horton v. State,* 163 Ga. App. 809 (1) (295 SE2d 554).

3. There was no error in admitting in evidence items taken without a warrant from the defendant personally and the pickup truck when he was apprehended.

The apprehending police officers had received information from other police officers to be on the lookout for two white males who had committed a robbery, and were armed and dangerous, riding in a white pickup with a tool box on the back. "Under such facts we have no hesitancy in concluding the officers had reasonable cause to stop the car and arrest its occupants. Whether an arrest is constitutionally valid depends upon whether, at the moment the arrest was made, the officers had probable cause to make it. When the officers first saw this car, we conclude at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestees had committed or were committing an offense. [Cit.]" *Hamilton v. State,* 162 Ga. App. 116 (2), 117, supra.

Therefore, we find that the defendant was lawfully arrested. "It is settled law that an officer at the time of a lawful custodial arrest may, without a warrant, make a full search of the person of the accused [Cit.] . . ." *Williams v. State,* 150 Ga. App. 852 (1) (258 SE2d 659).

The items taken from the cab of the pickup as well as from the open overnight bag lying in the open bed of the pickup were lawfully seized. "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton, 453 U. S. 454, 460 (101 SC 2860, 69 LE2d 768).

Accord, *State v. Hopkins,* 163 Ga. App. 141 (2) (293 SE2d 529); *Wilson v. State,* 167 Ga. App. 148 (1) (306 SE2d 16). We have no difficulty in applying the foregoing rule to an open container lying in the open bed of a pickup truck whose occupants have been lawfully arrested.

4. Failure to sever the possession of marijuana count from the remaining counts was not error. "The conduct of [the defendant] . . . of riding around in a [pickup] with marijuana and a firearm and the fruits and tools of a burglary, 'may establish the commission' of all the crimes charged in the indictment counts, Code Ann. § 26-506 (a) [now OCGA § 16-1-7 (a)], and may constitute a continuous series of acts or single scheme or plan. [Cit.] These offenses '*must* be prosecuted in a single prosecution.' (Code Ann. § 26-506 (b) [now OCGA § 16-1-7 (b)])." *State v. Santerfeit,* 163 Ga. App. 627, 628 (295 SE2d 756).

5. At the beginning of the second day of trial, defendant made a motion for mistrial on the grounds that some state's witnesses who had testified, despite the caution of the court not to do so, had discussed their testimony with other state's witnesses who had not yet testified. Evidence supporting the motion was the testimony of the female coindictee arrested with defendant, who had been waiting in the witness room, that she heard such discussions during the preceding day and related what she had heard. The court heard the testimony of the state's witnesses she identified, who disputed that any substantial discussions had taken place and stated that only innocuous remarks were made. The court denied the mistrial, a request that the witnesses' testimonies be excluded, and a request that the jury be instructed as to the witnesses' credibility because they had discussed their testimony. The defense was permitted to attack credibility by cross-examining the state's witnesses concerning any discussions of their testimony. Defendant enumerates as error the failure of the trial court to impose an appropriate sanction on the state's witnesses for their violation of the rule of sequestration.

"In criminal cases, the violation of the rule of sequestration by *any* witness either for the defense or for the prosecution goes to the credibility rather than to the admissibility of the witness' testimony. [Cits.]" *Blanchard v. State,* 247 Ga. 415 (1), 417 (276 SE2d 593).

Of course, the rule of sequestration was not violated as it only prevents a potential witness from being present in the courtroom while any other witness is testifying. OCGA § 24-9-61 (Code Ann. § 38-1703); *Stevens v. State,* 247 Ga. 698 (6) (278 SE2d 398).

If the witnesses did discuss their testimony, their only possible delict was violation of an instruction of the court not to do so. As the court permitted the defense to fully explore this issue by cross-examination of the state's witnesses, which included the female

coindictee who said she overheard the discussions, and the jury was fully charged on the credibility and impeachment of witnesses, we find that the trial court, in its discretion, took appropriate and sufficient measures to alleviate any possible harm to defendant.

6. Defendant alleges that his character was improperly put in issue in three ways: By a state's witness testifying that he was unemployed, by the same witness testifying that defendant had given her some cocaine, and by the prosecutor in argument referring to defendant as a "doper."

Character is not put in issue by evidence of unemployment. *Mitchell v. State,* 236 Ga. 251 (3) (223 SE2d 650).

As to defendant's coindictee girl friend's testimony that he had given her some cocaine on the day of the alleged offenses, because there was evidence that defendant was found in possession of marijuana, as charged, and was looking for Johnson's "stash" of drugs, evidence of possession of another drug was admissible as a similar crime logically connected to the crimes charged.

"The *only* separate crimes which are admissible are those that are either similar *or* logically connected to the crime for which defendant is being tried. . . . Proof of crimes which *are* similar or *are* closely connected to the crime charged *does* tend to establish the crime charged.

"Drug cases are no different from any other cases. If the defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct." *State v. Johnson,* 246 Ga. 654 (1), 655 (272 SE2d 321).

There being evidence of defendant's possession of, distribution of and search for drugs, the prosecutor's characterization of him as a "doper" was a reasonable inference from the evidence. While defendant defines "doper" as a drug dealer, our understanding of the term is that it applies to anyone who uses, possesses or supplies drugs. Compare, *Futch v. State,* 145 Ga. App. 485 (2) (243 SE2d 621).

7. The trial court's refusal to admit copies of loan documents executed by Johnson, if error, was harmless, as the matters contained therein were testified to by the loan officer and admitted by Johnson. Compare, *Milstead v. State,* 155 Ga. App. 407 (2) (270 SE2d 820).

8. There was no error in adjudging separate sentences for armed robbery, burglary and theft by taking as the latter two were not lesser included nor did they merge into the armed robbery.

It is not error to sentence separately for armed robbery and burglary, as one is not included in the other. *Moore v. State,* 140 Ga. App. 824 (2) (232 SE2d 264); *Bissell v. State,* 157 Ga. App. 711 (4) (278

SE2d 415).

Defendant was indicted for theft by taking the Pontiac Firebird, property of Johnson's sister-in-law. The evidence showed that after defendant and Register had committed burglary by entering Johnson's house without authority and with intent to commit a felony or theft therein, and committed armed robbery with an offensive weapon during which property was taken from the house, they then left in the sister-in-law's car which was parked outside of the house with the keys in it.

As the car did not belong to the robbery victim, the facts in this case are stronger than in *Holt v. State,* 239 Ga. 606 (238 SE2d 399), where the defendant by the use of a knife forced a cab driver to an isolated place, ordered him out, took his money, tied him to a tree, and then drove off in the cab. Distinguishing *Painter v. State,* 237 Ga. 30, 34 (226 SE2d 578), cited by the defendant herein, the court held that the theft of the cab was not a lesser offense of armed robbery as a matter of law or fact. We likewise find that the theft of the car was not a lesser offense of the robbery in the instant case as a matter of law or fact.

9. The remaining allegations of error have no merit.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED SEPTEMBER 30, 1983.

*Kenneth L. Gordon,* for appellant.
*H. Lamar Cole, District Attorney,* for appellee.