### A98A1315. MAXWELL v. THE STATE.
(503 SE2d 668)

ELDRIDGE, Judge.

A DeKalb County grand jury returned an indictment against appellant Herbert Maxwell and two co-defendants, Alonzo Johnson and Dennis Jordan, charging each of them with one count of armed robbery, three counts of aggravated assault, one count of burglary, and two counts of false imprisonment. A jury found all three men guilty of armed robbery, one count of aggravated assault, and two counts of false imprisonment. Here, Maxwell appeals, challenging the sufficiency of the evidence against him and alleging three errors of law. We affirm.

1. On appeal following a conviction, the evidence must be viewed in a light most favorable to the verdict, and Maxwell no longer enjoys a presumption of innocence; moreover, on appeal this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Webb v. State*, 228 Ga. App. 624, 625 (492 SE2d 312) (1997).

In a light most favorable to the verdict, the evidence in this case shows that in November 1996, at approximately 8:00 p.m., Epimenio Jimenez and his brother-in-law, Ever Aquirre, were in their ground floor apartment located at 4753-A Terrace Garden Apartments,

---

[1] Reversed on other grounds in *Brewton v. State*, 266 Ga. 160 (465 SE2d 668) (1996).

Buford Highway, Chamblee, Georgia. Also present were Jimenez's three young children and Jimenez's brother, Albaro. Ever Aquirre heard a knock at the front door. As he opened the door, it was kicked open the remainder of the way. Appellant Maxwell entered the apartment along with co-defendants Johnson and Jordan.

Maxwell and Johnson had guns; Jordan carried a knife. Maxwell put his gun to Aquirre's head, and Johnson pulled several gold chains from around Aquirre's neck. Maxwell then hit Aquirre in the head with his weapon. All three of the assailants repeatedly demanded money.

After the initial assault on Aquirre, Epimenio Jimenez rushed into the bedroom to call 911. He held the bedroom door shut as the assailants kicked at it. The police received the 911 call and immediately dispatched officers to the scene. One officer, E. Westbrooks, was on patrol nearby and reached the complex within "seconds" of the 911 call going out. Officer Westbrooks also worked security at the apartments when off-duty, so he was familiar with the precise incident location in the large complex. He pulled in front of the victims' building and waited for backup assistance.

In the apartment, the assailants were successful in kicking the bedroom door almost all the way in. When they discovered that Jimenez was on the telephone with the police, Maxwell and the co-defendants fled the apartment. They got into a black Acura that had been parked outside the victims' building and started to leave the parking lot at a high rate of speed with the car's headlights off. As Officer Westbrooks witnessed this, Albaro Jimenez rushed out into the parking lot yelling and pointing at the fleeing Acura. Westbrooks activated his blue lights and siren and followed the Acura, which then exited the complex from the drive marked "entrance," almost hitting an entering police car.

Westbrooks and other officers engaged in a high speed chase of the black Acura down Buford Highway to Clairmont Road. The Acura reached speeds of over 90 mph and continuously changed lanes in order to avoid traffic. The Acura turned onto Clairmont where it hit a pickup truck and was knocked off the road. Westbrooks, close behind, pulled over and immediately approached the vehicle; the driver was attempting to "crank" the car in order to continue to flee. Westbrooks removed the driver from the car. Other officers on the scene removed the passengers. Dennis Jordan was the driver, and Alonzo Johnson was the front seat passenger. Appellant Maxwell was in the back seat of the Acura.

Only 20 minutes had elapsed between the time of the initial armed robbery and the stop. Ever Aquirre was brought to the scene on Clairmont Road and identified Maxwell as the one who put the gun to his head and struck him with the weapon; Aquirre also identi-

fied co-defendants Johnson and Jordan as participants in the armed robbery.

Thereafter, pursuant to a search of the car, a brown leather gun holster was found in the back seat floorboard, near where Maxwell had been sitting. The holster was marked "Smith & Wesson Model 29." Because a gun was not located in the Acura, officers returned to the victims' apartment building to search for one. A blue steel Smith & Wesson Model 29 revolver was located in the fire lane of the parking lot nearest the victims' building. The weapon fit the holster recovered from the Acura.

At trial, the jury heard the 911 tape, which included a terrified Epimenio Jimenez reporting what was happening as it occurred, children crying out in the background, and Jimenez's attempts to prevent the assailants from breaking in the bedroom door. The jury heard testimony from Jimenez, as well as Aquirre who made an in-court identification of Maxwell, Johnson, and Jordan as the perpetrators of the armed robbery. The jury also heard testimony from the police officers involved, including Westbrooks, regarding the chase, the investigation, and the identification of Maxwell, Johnson, and Jordan as the occupants of the Acura. An officer also testified as to Aquirre's out-of-court identification of the three men as the perpetrators of the armed robbery at the time of the incident. The jury had before it both the Smith & Wesson Model 29 holster recovered from the back floorboard of the Acura and the Smith & Wesson Model 29 revolver found in the parking lot near the victims' apartment. Also, the jury heard the statements that Aquirre and Jimenez gave to the police at the time of the incident, which statements did not vary in any material respect from their trial testimony. Neither Maxwell nor the other defendants introduced any evidence at trial.

We find that the evidence was more than sufficient for a rational trier of fact to have found Maxwell guilty beyond a reasonable doubt of the offenses of armed robbery, aggravated assault, and two counts of false imprisonment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Maxwell contends that under the recent Supreme Court of Georgia case of *Duckworth v. State*, 268 Ga. 566 (492 SE2d 201) (1997), the trial court erred by requiring that he tender the statements of the victims into evidence before using the prior inconsistencies allegedly contained therein for impeachment purposes. Maxwell contends that this error resulted in his losing the right to final opening and concluding argument to the jury.

Appellant is correct that under the Supreme Court's holding in *Duckworth v. State* (decided six months *after* the trial of this case), "the statute [OCGA § 24-9-83] does not require that the prior inconsistent statement be admitted into evidence before it is used for

impeachment purposes." Id. at 568. Thus, the trial court's ruling was error. "However, error does not require reversal unless there is harm resulting from it. *Mobley v. State*, 265 Ga. 292 (4) (455 SE2d 61) (1995)." *Jackson v. State*, 268 Ga. 391, 392 (490 SE2d 84) (1997).

Here, unlike in *Duckworth* and the cases cited therein, Maxwell registered his objection to the trial court's ruling and then acquiesced in that ruling, tendering the victims' statements, which were read verbatim to the jury. Maxwell's attorney cross-examined the victims vigorously regarding perceived inconsistencies between their statements and their trial testimony. Such alleged inconsistencies were before the jury for their consideration. Accordingly, the issue here involves an analysis of a different type of "harm" than that ostensibly flowing from the trial court's erroneous ruling in *Duckworth*; here, the harm alleged is the loss of opening and concluding argument to the jury.

"[W]here the evidence in a criminal case demands a verdict of guilty, the fact that the defendant was improperly deprived of the right to open and conclude the argument will not necessitate a new trial." (Citation omitted.) *Scott v. State*, 243 Ga. 233, 235 (253 SE2d 698) (1979); *Vaughn v. State*, 171 Ga. App. 261, 262 (319 SE2d 97) (1984). Here, in light of the 911 tape, the immediacy and intensity of the police chase of Maxwell from the scene, the prompt out-of-court identification and subsequent in-court identification of Maxwell as a perpetrator, the location and connection of the holster and the weapon to Maxwell and the incident, as well as other testimony at trial and the complete absence of any defense to the crimes, "we find it highly probable that any error in this regard did not contribute to the verdict." (Citations and punctuation omitted.) *Seavers v. State*, 208 Ga. App. 711, 713 (431 SE2d 717) (1993).

3. Maxwell next challenges as error the trial court's charge to the jury:

(a) Maxwell contends that the trial court's charge that "[a] reasonable doubt may grow out of evidence or the lack thereof" was insufficient because it failed to instruct the jury that reasonable doubt may arise from a "conflict in the evidence."

We have reviewed the trial court's instructions as a whole and find this contention meritless. The court instructed the jury that reasonable doubt must be based upon evidentiary considerations, which is the law. *Lloyd v. State*, 214 Ga. App. 564, 568-569 (448 SE2d 729) (1994). The trial court further instructed the jury regarding conflicts in evidence that may arise, and the jury's duty with regard to the credibility of witnesses in the event of conflicting testimony.

"As the charges given were correct statements of the law, and we do not believe that the charge as a whole would mislead a jury of average intelligence, we find no error." (Citation omitted.) *Dooley v.*

*State*, 221 Ga. App. 245, 246 (3) (470 SE2d 803) (1996).

(b) The decision to raise at trial specific objections to the jury charge and the failure thereafter to reserve the right to raise additional objections on motion for new trial or on appeal precludes this Court's consideration of any alleged errors in the charge not raised in the court below. *Russell v. State*, 264 Ga. 121 (3) (441 SE2d 750) (1994).

4. Maxwell contends that the trial court erred in permitting the State to call translator Marguerite Ramirez as a witness when (a) her name was not on the witness list pursuant to OCGA § 17-16-8 and (b) Ramirez testified as an "expert," offering opinion evidence as to what the victims meant in certain statements. We find no error.

(a) In objecting to this witness' testimony, Maxwell did not request a continuance, seek an opportunity to interview the witness prior to her testimony, or claim unfair surprise or prejudice of any kind. Under such circumstances, the trial court did not err in permitting Ramirez to testify, although her name was not on the witness list. OCGA §§ 17-16-6; 17-16-8; *Satterfield v. State*, 228 Ga. App. 89 (491 SE2d 189) (1997).

(b) The victims made their statements to the police in Spanish. Marguerite Ramirez translated these statements into English for the jury. Such a witness is not an "expert" witness because such witness offers no *personal* knowledge of any substantive fact regarding the case for which the translation is received. OCGA § 24-9-67. Further, a review of the record shows that Ramirez's "opinion" about which Maxwell complains was elicited by the defense attorney. It is a well-settled appellate rule that one cannot complain about a ruling of the trial court which the party's own trial tactics or conduct procured or aided in causing. *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

Decided June 30, 1998 —
Reconsideration denied July 15, 1998.

*Cynthia A. Price*, for appellant.
*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Barbara B. Conroy, Assistant District Attorneys*, for appellee.