A99A1763. EVANS v. THE STATE.
(523 SE2d 103)

JOHNSON, Chief Judge.

Billy Joe Evans was convicted of burglarizing a store and committing an armed robbery of a store employee. He appeals, claiming that there is not enough evidence to support the convictions; the court erred in not merging the offenses; the jury charges were improper in various respects; and the court erroneously failed to hear any argument before sentencing him. The claims are without merit because the evidence, including Evans' admission to his girlfriend that he had committed the crimes and that tools of the crime found in her apartment belonged to him, was sufficient to prove his guilt; the two crimes do not merge as a matter of law or fact because they consist of different elements and were proved by different facts; the jury charges were adjusted to the facts and were correct statements of law; and the court gave Evans an opportunity to make an argument before sentencing, but Evans declined the court's offer. Because Evans has not shown any error, we affirm his convictions.

At about 7:40 a.m., on Friday, December 12, 1997, Paula Lykins arrived for work at Sam's Check Cashing store in Griffin. She began getting the store ready for its 8:00 a.m. opening by turning on computers and lottery equipment and by unlocking the store safe. While setting up a lottery ticket display, she noticed movement behind her and turned to see two men in dark clothing and ski masks. One of the men had a handgun. Lykins screamed, and the men told her to be quiet or they would hurt her. The men forced Lykins into a rest room and made her sit on the toilet, with the gun pointed at her face.

As she sat there, Lykins heard a voice come over a walkie-talkie the men had. The man with the gun then left the rest room. The other man bound Lykins' hands and feet with plastic straps and taped her mouth shut. He then left the rest room. Lykins heard some commotion in the store followed by the front door slamming, so she assumed the men had left. She slipped the plastic strap off her feet, crawled out of the rest room and saw that money had been taken from the safe and that lottery tickets were missing. She tried to call the police, but the telephone did not work, so she went to the business next door to call for help.

Law enforcement officers arrived at the store and found that a padlock securing a fence behind the store had been cut, the store's telephone lines had been cut, and an entry hole had been sawed into

the store roof. The police also found two ski masks on a trail leading from the store area to the nearby Heritage Apartments. The police spoke to the Heritage maintenance supervisor, who told them that between approximately 7:40 and 7:50 on the morning of the robbery he had seen two men he did not recognize, leaving an apartment building. And one of them was carrying a duffel bag.

The police eventually discovered that Evans' girlfriend, Natasha Relthford, lived in that apartment building and that Evans would sometimes stay there with her for as much as a week at a time. Evans was with Relthford at the apartment the night before and the day of the robbery. He was there again the day after the robbery, along with his friend Clifford White, who was carrying a gun in his waistband. Sometime later that day, Evans left with White, and never returned.

Three days after the robbery, the police went to the apartment and were allowed by Relthford's roommate, Tashika Curtis, to search the apartment. In a closet, the police found bolt cutters that an expert later determined were those used to cut the padlock at the store. They also found plastic straps identified by another expert as being similar to those used to bind Lykins. And the police discovered a circular saw and a pair of shoes, all of which were covered in a white powder like that found around a crumbled wall in the store. Other items found in the closet included walkie-talkies, a pair of black gloves, a small flashlight and a knife.

On about the same day when the police searched her apartment, Relthford spoke with Evans on the telephone. During their conversation, Evans admitted to her that he had committed the robbery and that the things found in the apartment closet were his. Relthford later told the police that Evans had confessed to the crimes.

Evans and White were arrested and indicted for armed robbery and burglary. The state eventually decided not to prosecute White, but Evans was tried before a jury, which found him guilty of both charges. The court sentenced him to life imprisonment for the armed robbery and 20 years imprisonment for the burglary. Evans appeals from his convictions.

1. On appeal, this court views the evidence in the light most favorable to the verdict and determines if the evidence is sufficient to prove the appellant's guilt beyond a reasonable doubt; we do not presume that the appellant is innocent, weigh the evidence or determine witness credibility.[1] In this case, all the evidence, including the facts that the tools used to commit the crimes were found in the apartment closet of Evans' girlfriend, that Evans admitted to his girlfriend that

---

[1] *Maxwell v. State*, 233 Ga. App. 419 (1) (503 SE2d 668) (1998).

the tools belonged to him, and that he admitted to her that he had committed the crimes, was sufficient to enable the jury to find Evans guilty beyond a reasonable doubt of participating in the burglary and armed robbery.[2]

2. Evans' complaint that the court erred in failing to merge the armed robbery and the burglary charges is completely without merit because not only are the elements and the culpable mental state required of these crimes different,[3] but the facts which proved each crime were different.[4] It was not error for the court to convict and sentence Evans separately for armed robbery and burglary because neither of those crimes is included in the other.[5]

3. Evans argues the court should have given his requested charge on alibi because Relthford testified that Evans was with her between 7:30 and 8:00 on the morning of the burglary and robbery. Evans' argument misconstrues Relthford's testimony. She actually testified that on the morning of the crimes Evans was with her in her apartment, that she left for work a little bit after 7:30, and that Evans then stayed in the apartment. Relthford does not know what Evans did after she left the apartment.

Where the evidence supporting an alibi defense does not show the impossibility of the defendant's presence at the crime scene during the crime's commission, the failure of the court to charge the law of alibi is not error.[6] Here, Relthford's testimony does not show that it was impossible for Evans to have left the apartment after she left at just past 7:30, gone to the nearby store, and participated in the burglary and robbery that occurred around or after 7:40. Because the evidence relied on by Evans does not show the impossibility of his presence at the crime scene, the trial court did not err in refusing to give an alibi charge.[7]

4. Evans claims that the court erred in charging the jury on the concepts of parties to a crime and conspiracy. The claim is without merit.

Conspiracy in an evidentiary sense concerns the participation of individuals in a crime, and it is not error for the trial court to charge this doctrine where the evidence tends to show a conspiracy.[8]

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lawson v. State*, 214 Ga. App. 464, 465 (1) (448 SE2d 14) (1994); *Johnson v. State*, 190 Ga. App. 697, 698 (1), (2) (380 SE2d 81) (1989).

[3] OCGA §§ 16-7-1 (a); 16-8-41 (a).

[4] See OCGA §§ 16-1-6; 16-1-7; *Golden v. State*, 233 Ga. App. 703, 704-705 (2) (a), (b) (505 SE2d 242) (1998).

[5] See *Boyd v. State*, 168 Ga. App. 246, 251-252 (8) (308 SE2d 626) (1983).

[6] *Smith v. State*, 224 Ga. App. 819, 820 (1) (481 SE2d 896) (1997).

[7] See *Hulett v. State*, 262 Ga. 194, 195 (2) (415 SE2d 642) (1992).

[8] *Thomas v. State*, 255 Ga. 38, 41 (2) (334 SE2d 675) (1985).

Because the state presented evidence that Evans and an accomplice, acting together, burglarized the store and robbed the store employee at gunpoint, the charge on conspiracy was in order.[9]

Likewise, the evidence established that Evans was guilty as a party to the burglary and armed robbery under OCGA § 16-2-20, and where there is any evidence upon a particular point, it is not error for the court to charge the law on that point.[10]

5. Evans challenges the following emphasized language in the court's jury instructions on reasonable doubt: "It is not an arbitrary or capricious doubt, *nor does it mean the possibility that the defendant may be innocent*." Although this language is not part of the suggested pattern criminal charges, challenges to such language have been rejected.[11]

6. Evans' claim that he was not afforded an opportunity to make any argument before the court sentenced him is not supported by the trial transcript, which shows that the court held a presentence hearing as required by OCGA § 17-10-2 (a). That Code section provides that after a guilty verdict in a felony case the judge must conduct a hearing to determine punishment, and at the hearing the prosecutor argues first and the defendant argues last.[12]

After the verdict in this case, the court first heard the state's offer of Evans' prior criminal convictions as evidence in aggravation of punishment. The court then asked Evans' attorney if she had anything to offer in mitigation of punishment. She responded, "No Your Honor. You've heard the case." The court then announced the sentence and the reasons for it. Evans made no objection.

Because Evans declined the opportunity to present anything in mitigation of punishment and then failed to raise any objection when the court imposed its sentence, we find no merit to his claim of error.[13]

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 6, 1999.

*Rosamund P. Braunrot*, for appellant.

---

[9] See *Hamilton v. State*, 179 Ga. App. 434, 436-437 (6) (346 SE2d 881) (1986); *Kennedy v. State*, 172 Ga. App. 336, 338-339 (2) (c) (323 SE2d 169) (1984).

[10] See *Rocha v. State*, 234 Ga. App. 48, 52 (4) (506 SE2d 192) (1998); *Kennedy*, supra.

[11] See *Andrews v. State*, 201 Ga. App. 329, 330-331 (2) (411 SE2d 52) (1991).

[12] *Jenkins v. State*, 235 Ga. App. 547, 549 (3) (b) (510 SE2d 87) (1998).

[13] See *Davis v. State*, 214 Ga. App. 360, 362 (6) (448 SE2d 26) (1994); *Willey v. State*, 209 Ga. App. 398, 400 (4) (433 SE2d 674) (1993).

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.