A99A1219. GRAY et al. v. THE STATE.
(523 SE2d 626)

BARNES, Judge.

In a joint trial, Saleen Gray and Bobby Gray were convicted of armed robbery and multiple counts of false imprisonment. On appeal, the Grays contest the admission of the incriminating remarks they made to the trial court during an arraignment hearing and also the effectiveness of their counsel at trial. For the reasons that follow, we affirm.

When viewed in the light most favorable to the verdict, the evidence showed that just before 7:00 a.m., brothers Bobby and Saleen Gray robbed a Piccadilly Cafeteria. During the robbery, Bobby Gray pointed a gun at the manager's head, cocked it, and threatened, "This is your last chance to open up the safe." In the meantime, Saleen Gray herded the other employees together and forced them to lie on the floor. As soon as the manager saw the Grays flee on the surveillance monitor, he contacted the police. The cafeteria was located near the DeKalb County Police South Precinct in South DeKalb Mall, and

the robbers' departure coincided with a precinct shift change when numerous officers were in the area. Officer G. Peterson heard the lookout and spotted the Grays running. When the Grays split up, Peterson and several other officers successfully pursued Bobby Gray. One officer managed to grab a loaded handgun from him. In custody later, Bobby said, "I should have locked [them] up in the freezer."

Meanwhile, other officers caught Saleen Gray in front of the mall. Gray's backpack held the cafeteria's blue bank bag, including deposit slips for the date of the robbery and about $11,000 in cash. After being handcuffed, Saleen Gray declared, "He made me do it."

The victims identified the Grays' clothing, which was also identifiable in still photographs and on a surveillance tape. The victims also recognized the gun, bank bag, money, and deposit slips found in Saleen Gray's backpack.

1. The Grays assert that the trial court erred in admitting incriminating statements made during an arraignment hearing. Before the arraignment calendar call, the trial court explained to everyone that the purpose of the hearing was for the defendants to learn about the charges against them and enter a plea of guilty or not guilty. The court then said, "If you're thinking about entering a plea of guilty, you should ask for a pre-trial hearing. If you enter a plea of guilty you must first understand the charge or charges against you. If you have any questions about them, ask whatever questions you have." When the trial court called the case against the Grays, the State responded first, outlining its case and its intention to seek 15-year sentences. Defense counsel responded with information about their criminal records and then advised the court that the defendants' mother wanted to address the court. After Mrs. Gray informed the trial court that she knew her sons had committed the crimes and explained that financial concerns for their family had motivated them to break the law, defense counsel conferred with his clients. Following this conference, both men admitted their participation in the crimes but denied that Bobby Gray pointed his gun at anyone during the robbery. The court then advised the defendants that it was inclined to accept the State's sentencing recommendation, and the defendants entered a plea of not guilty after again conferring with their counsel.

At trial, the court denied the Grays' motions to suppress these statements, finding that the statements were made voluntarily at defense counsel's request, without hope of benefit induced by anyone else. The court then admitted into evidence a transcript of the Grays' in-court statements, which the prosecuting attorney read to the jury.

We are troubled by the admission of these inculpatory statements at the Grays' trial. OCGA § 24-3-50 provides that, to be admissible, a confession "must have been made voluntarily, without being

induced by another by the slightest hope of benefit or remotest fear of injury." Therefore, confessions made during plea negotiations with the prosecutor are not admissible, because they are made in the hope that the defendant will get a better deal than he would otherwise. *Corthran v. State*, 268 Ga. 443 (491 SE2d 66) (1997). On the other hand, confessions made as a tactical decision are admissible when the hope or fear is a product of the defendant's own mind rather than the result of inducement by others. *Williams v. State*, 250 Ga. 553, 559 (1) (300 SE2d 301) (1983).

Unlike the case before us, the defense counsel in *Williams* testified during a *Jackson-Denno* hearing that he told the defendant the prosecutor was offering no promises, inducements, "hopes of reward or benefit or anything else." Id. We do not know from the record what the Grays' trial counsel told them during the hearing when these statements were made, and post-trial counsel failed to raise this argument at the ineffective assistance hearing.

However, pretermitting whether the trial court erred in admitting these statements, their admission was harmless in light of the prosecution's otherwise overwhelming evidence of the Grays' guilt. *Vaughn v. State*, 248 Ga. 127, 131 (2) (281 SE2d 594) (1981). The Grays made spontaneous inculpatory remarks after they were caught with the cafeteria's deposit slips and cash almost immediately after the robbery.

2. The Grays contend their trial lawyers had a conflict of interest and were ineffective per se because they were both affiliated with the same public defenders' office. The Grays assert that a Supreme Court of Georgia formal advisory opinion supports their contention that their lawyers were per se ineffective. However, the opinion advises only that, if a lawyer must decline multiple representation due to a conflict, then no attorney listed as "of counsel" on the lawyer's letterhead may accept or continue that employment. Formal Advisory Opinion No. 98-4. The opinion does not propose that having lawyers from the same office represent co-defendants constitutes ineffective assistance of counsel per se, and we decline to create such a rule here.

The true test of whether trial counsel was ineffective due to a conflict of interest is whether an actual conflict adversely affected his performance.

> Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction.

(Citations and punctuation omitted.) *Barnes v. State*, 160 Ga. App. 232-233 (286 SE2d 519) (1981). Because they relied solely on their ineffective per se argument, the Grays have not argued or shown any actual conflict of interest, much less any resulting adverse effect. Without such a showing, we find no error in the trial court's conclusion that the Grays' lawyers were not ineffective.

3. Finally, the Grays assert that their trial lawyers were ineffective for allowing them to make incriminating statements during pretrial proceedings. As discussed earlier, however, they did not raise that argument at the hearing on their ineffective assistance claim. Because any such allegation not raised at the earliest practical moment is waived, we will not consider it here. *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993).

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 19, 1999 —
RECONSIDERATION DENIED NOVEMBER 8, 1999 — 

*Elliott A. Shoenthal*, for appellants.
*J. Tom Morgan, District Attorney, Robert M. Coker, Aileen R. Page, Assistant District Attorneys*, for appellee.