A03A0996. GRIER v. THE STATE.
(586 SE2d 448)

BARNES, Judge.

Barry Lynn Grier was tried and convicted of six counts: aggravated assault, possession of a knife while committing the crime, interference with government property, terroristic threats, and two counts of obstruction of an officer. He appeals, contending that the trial court erred in denying his request for a continuance after a new State's witness appeared the day of trial, and in denying his request for a directed verdict of acquittal on one of the obstruction counts. He also asks us to remand his case for consideration of his claim of ineffective assistance of post-conviction counsel, who he contends has an actual conflict. For the reasons that follow, we affirm.

On appeal the evidence must be viewed in the light most favorable to the verdict, the appellant no longer enjoys the presumption of innocence, and the appellate court determines the sufficiency of the evidence and does not weigh the evidence or judge the credibility of the witnesses. *Grant v. State,* 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

Viewed in that light, the evidence showed that Grier confronted a man in the street with whom he had earlier exchanged words, and began swinging at him with a stick. The victim testified he pulled out his utility knife and swung back at Grier, cutting him on the arm. Grier's stick broke, and as he picked up a big board, the victim left the scene and called the police. After the victim came back outside to wait for the police, Grier came around the corner with a five-gallon jug of kerosene or gasoline and a box of matches, and began trying to douse the victim as the victim ran. When the liquid was gone, Grier pulled two knives from his belt and came at the victim. The police arrived and made Grier drop the knives, then took him to the hospital for stitches in his arm. They arrested the victim and took him to jail.

After Grier received medical treatment, he was also arrested and taken to jail. While being processed, he became belligerent and

refused to answer questions or go to a holding cell, and the jail dispatcher sprayed him with pepper spray. Grier ran to the back of the jail, and all of the officers and other inmates went to the front of the jail to escape the cloud of pepper spray. While Grier was alone in the back part of the jail, the officers heard loud banging and crashing noises. When they tried to go back in to talk to Grier, he threw a broom at them, spear-fashion, striking one of the officers in his back and knocking him to his knees. During this episode, Grier threatened to return to the jail and kill the officers and their families, which two of the officers admitted caused them some concern.

After approximately two hours, the officers managed to subdue Grier. At that time, the jail floor was four or five inches deep in water. The sprinkler system was pulled out of the ceiling, the bathroom commode and sink were broken and pouring water, the water cooler had been kicked over, and the phone, exit signs, smoke detector, and light fixtures had been damaged.

1. Grier contends that the trial court erred in denying his request for a continuance when a new State's witness appeared on the day of trial. This witness was not on the State's witness list because the State did not know about him until the day of trial; the witness came to court voluntarily to testify about what he saw of the fight between Grier and the victim. Both the prosecutor and Grier interviewed the witness briefly before Grier moved for the continuance, and the trial court granted them additional time before trial began to interview him further. The court also directed the State to check the witness's criminal record and furnish that information to Grier before the witness testified.

While Grier contends that he never received the criminal background check of the witness, nothing in the record establishes whether he did or did not receive it, and he made no objection when the State called the witness. Further, he does not argue that the witness actually had a criminal record that could have been used to impeach his credibility. The witness testified that he saw Grier chasing the victim with a can of gas or kerosene, and that after he had gone inside to call the police, he came out again to see Grier chasing the victim with a knife. Then the police arrived and made Grier drop his weapon.

"Granting or refusing a continuance is a matter within the sound discretion of the trial court, and absent a clear showing of abuse, this court will not reverse for refusing to grant a continuance." (Citations and punctuation omitted.) *Downs v. State*, 240 Ga. App. 740, 741 (2) (524 SE2d 786) (1999). Allowing defense counsel an opportunity to interview the newly discovered witness is a permissible alternative to a continuance. *Price v. State*, 223 Ga. App. 185, 186 (3) (477 SE2d

353) (1996). In this case, it is clear that the State discovered the witness's name at the same time Grier did, and Grier did not argue to the trial court and has not shown on appeal that the interviews led to any other witnesses or evidence of which he was otherwise unaware. He has not argued any harm as a result of the trial court's ruling, and we find no abuse of discretion.

2. Grier contends that the trial court should have granted his motion for a directed verdict on Count 6, which charged him with obstructing "a correctional officer in the lawful discharge of his official duties by doing violence to such legally authorized person by hitting him with a broom handle." He argues that the State failed to prove that the person named in the indictment, the jail dispatcher, was a "correctional officer."

A motion for a directed verdict in a criminal case should only be granted when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. OCGA § 17-9-1 (a); *Alexander v. State*, 263 Ga. 474, 478 (3) (435 SE2d 187) (1993). The test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), is the appropriate one to use when the sufficiency of the evidence is challenged, whether the challenge is from the denial of a directed verdict or the denial of a motion for new trial based upon alleged insufficiency of the evidence. *Humphrey v. State*, 252 Ga. 525, 527 (1) (314 SE2d 436) (1984).

OCGA § 16-10-24 (b) provides that a person who "knowingly and willfully resists, obstructs, or opposes any law enforcement officer, prison guard, correctional officer, probation supervisor, parole supervisor, or conservation ranger in the lawful discharge of his official duties by offering or doing violence to the person of such officer or legally authorized person" commits a felony. Further, OCGA § 35-8-24 (a) (1) and (b) provide that a person must complete a training course for jail officers approved by the Georgia Peace Officer Standards and Training Council within six months of his initial employment to be authorized to serve as a jail officer in any detention facility.

Grier argues that the dispatcher had not completed the training requirements for jail officers in the first six months of his employment as required by OCGA § 35-8-24, and, in fact, testified that he had not completed any training whatsoever. Therefore, Grier concludes, the State failed to prove an element of the crime of obstruction of an officer.

The record does not support Grier's argument that the dispatcher did not receive the required training within six months of his employment, and does not support the contention that the jailer was never trained. Instead, it shows the dispatcher had not yet been

trained when Grier was arrested, five months after the dispatcher was employed. The jailer testified, "I was scheduled to go to Bulloch County and take a course. Bulloch County had — before I got down there had ceased to do jailer school, and they lined me up to go to another jailer school." OCGA § 35-8-24 (b) grants a grace period of six months for a correctional officer to successfully complete an approved training course, and the dispatcher in this case was apparently within that grace period. Further, "[p]roof that the [correctional] officer was certified is not an essential element of OCGA § 16-10-24." *Dennis v. State*, 220 Ga. App. 420 (1) (469 SE2d 494) (1996). We conclude that the trial court did not err in denying Grier's motion for a directed verdict of acquittal on Count 6.

3. Grier contends we should remand his case to the trial court for a hearing on whether his post-conviction counsel was ineffective for filing only a one-page amended motion for new trial raising the issue of ineffective assistance of trial counsel and selective prosecution, and for failing to cite to the record or to any authority during the motion hearing. A review of the motion hearing transcript reveals that Grier himself raised the issue of his post-conviction counsel's effectiveness before the trial court. Grier stated that he and his lawyer had had "some differences about the approach to different issues that I wanted raised," and protested the fact that he had just received a copy of his lawyer's amended motion for new trial. After describing his dissatisfaction with his post-conviction counsel for almost 12 transcript pages, his lawyer responded that he had tried to obtain from Grier the information Grier thought would aid in presenting his case at the hearing, but that Grier had not responded. Grier then stated, "I made it crystal clear that I didn't even want you to represent [me] in this case. I tried to do everything I could do get that [sic]. I tried to do that. It's evidence we've got a conflict. The evidence, you refused to get it." Exercising extraordinary patience, the trial court then allowed Grier an apparently unlimited opportunity to take the stand and present each issue he wished to raise in his motion for a new trial. At the end of the hearing, the trial court offered Grier, who made it clear that he did not want his appointed counsel to handle the case, the opportunity to supplement his motion for a new trial with a brief citing to the record. When Grier said he would need three weeks, the trial court gave him a month. The hearing was held on February 26, 2002, and the trial court waited more than three months before entering its order denying the motion on June 3, 2002.

To preserve the issue of ineffective assistance of previous counsel, new counsel must raise the issue at the first possible stage of post-conviction review or the issue is waived. *McGlohon v. State*, 228 Ga. App. 726, 728 (3) (492 SE2d 715) (1997). Grier's current appellate

counsel was appointed after Grier's appeal was docketed in this court. Therefore, new appellate counsel did not have the opportunity to raise this ineffective assistance issue before the trial court. Generally, when the appeal presents the earliest practicable opportunity to raise an ineffectiveness claim, and the claim is indeed raised for the first time on appeal, we remand the case to the trial court for an evidentiary hearing on the issue. *Setser v. State*, 233 Ga. App. 822, 824 (2) (505 SE2d 798) (1998). Remand is not mandated, however, "if we can determine from the record that [Grier] cannot satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984)." *Shorter v. State*, 239 Ga. App. 625 (1) (521 SE2d 684) (1999).

To meet that two-prong test, the defendant must show that trial counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Martin v. State*, 276 Ga. 121, 122 (2) (575 SE2d 498) (2003). In his appeal, Grier makes only a generalized argument that his post-conviction counsel was ineffective for failing to be more specific regarding his trial counsel's ineffectiveness. He gives us no hint as to how his trial counsel was ineffective, failing to cite to the trial transcript or even to outline his trial counsel's alleged deficiencies. By failing to make these arguments, and instead focusing only on the brevity of his first post-conviction counsel's motion for new trial, Grier has not shown that his first post-conviction counsel's failure to assert his trial counsel's ineffectiveness was deficient. Because Grier has presented no evidence to support his allegation that any of his counsels' actions fell below a reasonable standard of professional conduct, we conclude that Grier cannot satisfy the first element of the *Strickland* test, deficient performance on the part of his first post-conviction counsel, and cannot show that his first post-conviction counsel's failure to assert his trial counsel's ineffectiveness with more specificity was deficient. See *Shorter v. State*, supra, 239 Ga. App. at 626.

4. Finally, Grier seeks remand for an evidentiary hearing because his post-conviction counsel had previously prosecuted Grier while working as an assistant district attorney and thus had an actual conflict and was ineffective per se. The State responds that once the trial court became aware of the conflict, it corrected any error by appointing new appellate counsel.

The true test of whether counsel was ineffective due to a conflict of interest is whether an actual conflict adversely affected his performance.

> Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.

Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction.

(Citation and punctuation omitted.) *Barnes v. State*, 160 Ga. App. 232-233 (286 SE2d 519) (1981). Because he relied solely on his ineffective per se argument, Grier has not argued or shown any actual conflict of interest, much less any resulting adverse effect. Without such a showing, we decline to remand this case for further proceedings. See *Gray v. State*, 240 Ga. App. 716, 718-719 (2) (523 SE2d 626) (1999).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED AUGUST 18, 2003.

*Hube & Tucker, Matthew K. Hube*, for appellant.
Barry Grier, *pro se.*
*Richard A. Mallard, District Attorney, Michael T. Muldrew, Assistant District Attorney*, for appellee.