MILLER, Judge.
 

 David Baggs, Javier Lopez, and Joel Mondragon were each convicted on one count of trafficking in methamphetamine.; In Case Nos. A03A2080 and A03A2081, Baggs and Lopez challenge the sufficiency of the evidence with respect to their individual convictions. In Case No. A03A2082, Mondragon raises eight enumerations of error, all of which are without merit. We affirm in all three cases.
 

 **283
 

 Viewed in the light most favorable to the verdict, the evidence reveals that a confidential informant introduced Baggs to an undercover police officer. Baggs informed the officer that he would sell him 448 grams of methamphetamine and agreed to meet the officer at a restaurant with two friends to complete the transaction.
 

 Baggs called the officer when he and his two companions, Lopez and Mondragon, arrived in a gray car at the restaurant parking lot. The undercover officer drove into the parking lot and exited his car, and Baggs approached the officer. Mondragon drove the gray car in which he, Lopez, and Baggs had arrived and parked it next to the undercover officer's car. Mondragon got out of the car, and Lopez remained in the car, sitting in the rear passenger seat.
 

 Baggs told the officer to get into the driver's seat of the gray car so that he could show him the drugs. The undercover officer complied, Lopez moved into the front passenger seat, Mondragon sat in the rear driver's side seat, and Baggs sat in the rear passenger seat where Lopez had been sitting. Baggs removed a large bag of methamphetamine from under the rear passenger seat, and Mondragon burned a hole in the bag with a cigarette to give the undercover officer a chance to test the legitimacy of the drugs. The undercover officer simulated taking the drugs and informed Baggs that he would have to come with him inside the restaurant to get the money for the drugs from his partner. Baggs entered the restaurant with the undercover officer, where Baggs was arrested.
 

 Other officers who were keeping surveillance on the gray car in the parking lot arrested Lopez and Mondragon. An officer who searched the car found the bag of methamphetamine hidden under the dashboard on the side of the car where Lopez had last been sitting. The contents of the bag were tested, showing that the bag contained 446.7 grams of methamphetamine. The bag of drugs was admitted at trial with no objection.
 

 Baggs, Lopez, and Mondragon were each convicted on one count of trafficking in methamphetamine, and they now appeal.
 

 Case Nos. A03A2080 and A03A2081
 

 1. In Case No. A03A2080, Baggs argues that the evidence presented at trial was insufficient to sustain his conviction, and in Case No. A03A2081, Lopez argues that the trial court erred in failing to grant his motion for a directed verdict of acquittal. We find that the evidence sufficed to sustain the convictions in both cases.
 

 The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction.
 
 Hash v. State,
 

 248 Ga.App. 456
 
 , 457(1),
 
 546 S.E.2d 833
 
 (2001). We view the evidence in the light most
 

 **284
 

 favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.
 
 Short v. State,
 

 234 Ga.App. 633
 
 , 634(1),
 
 507 S.E.2d 514
 
 (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.
 
 Jackson v. Virginia,
 

 443 U.S. 307
 
 ,
 
 99 S.Ct. 2781
 
 ,
 
 61 L.Ed.2d 560
 
 (1979).
 

 "Any person who knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine ... commits the felony offense of trafficking in
 
 *737
 
 methamphetamine...." OCGA § 16-13-31(e).
 

 Here, the evidence reveals that both Baggs and Lopez could be found guilty of trafficking in methamphetamine beyond a reasonable doubt. Baggs actually handled and attempted to sell the nearly 450 grams of methamphetamine to the undercover officer. Lopez not only accompanied Baggs to the scene, but also sat in the seat under which the drugs were stored prior to their attempted sale, and was the last one sitting in the passenger side seat where the drugs were hidden after the attempted sale. The evidence was sufficient for a jury to conclude that both Baggs and Lopez were in possession of the drugs and were both active participants in the crime. See, e.g.,
 
 Lowe v. State,
 

 223 Ga.App. 172
 
 , 173,
 
 477 S.E.2d 341
 
 (1996). The evidence was therefore sufficient to sustain Baggs's conviction, and the trial court did not err in denying Lopez's motion for a directed verdict of acquittal. Id.; see also OCGA§ 16-13-31(e).
 

 Case No. A03A2082
 

 2. In two enumerations, Mondragon contends that the evidence presented at trial was insufficient to sustain his conviction. Specifically, he argues that the fact that a confidential informant initially introduced the police to Baggs indicates that Mondragon must have been entrapped by police. We find such argument to be entirely without merit.
 

 Contrary to Mondragon's argument, the evidence here reveals simply that Mondragon was a voluntary participant in an attempted sale of a large quantity of methamphetamine. Mondragon drove the gray car to the restaurant in order to complete the sale and even personally handled the drugs by burning a hole in the drug bag to give the purported buyer an opportunity to test the drugs. Mondragon had no contact with the confidential informant and indeed did not even present an entrapment defense at trial. The use of a confidential informant to alert police to the drug trafficking activity bore no relation to Mondragon's voluntary participation in such trafficking. The evidence sufficed to sustain the conviction. See
 
 Lowe,
 

 supra,
 

 **285
 

 223 Ga.App. at 173
 
 ,
 
 477 S.E.2d 341
 
 . Cf.
 
 Rutledge v. State,
 

 218 Ga.App. 130
 
 , 133(2),
 
 460 S.E.2d 551
 
 (1995) (evidence sufficed to sustain drug convictions, despite entrapment defense, where evidence supported finding that police did not trick defendant into handling drugs).
 

 3. Mondragon argues that he was denied his right to confront his accusers, because the State was not required to reveal the identity of the confidential informant. Ignoring for the moment the fact that Mondragon never made a motion to compel the State to reveal the informant's identity, as explained in Division 2, we hold that the identity of the confidential informant bore no relation to Mondragon's guilt or innocence, and thus no error could have resulted from Mondragon being unable to cross-examine him. Cf.
 
 Gant v. State,
 

 197 Ga.App. 351
 
 , 352-353(3),
 
 398 S.E.2d 301
 
 (1990). See also generally
 
 Leonard v. State,
 

 228 Ga.App. 792
 
 , 794-796(2),
 
 492 S.E.2d 747
 
 (1997).
 

 4. Mondragon contends for the first time on appeal that the jury verdict was improper as originally announced, because the jurors simply stated that they found all defendants guilty, instead of differentiating between each of the defendants individually. Since Mondragon failed to raise any objection to the form of the verdict at trial, he has waived this issue on appeal. See
 
 Mayorga v. State,
 

 225 Ga.App. 496
 
 , 497,
 
 484 S.E.2d 292
 
 (1997).
 

 5. Mondragon urges that the trial court erred in its charge on reasonable doubt. He contends that the trial court's use of the phrase "reasonable doubt means just what it says" as a part of the charge constituted reversible error, as such a phrase is circular and misleading. This argument is without merit.
 

 The charge as a whole reveals that the jury was properly instructed not to apply a standard of proof lower than that which would be constitutionally permissible for reasonable doubt. The definition was clear and all phrases in the charge were given sufficient context, and Mondragon has not shown otherwise. See
 
 Andrews v. State,
 

 236 Ga. App. 152
 
 -153(1),
 
 511 S.E.2d 258
 
 (1999).
 

 *738
 
 6. Mondragon argues that the trial court erred in failing to order that the closing arguments be taken down at trial, because this prevented him from raising any arguments to challenge closing arguments on appeal. However, the record does not reveal that Mondragon ever requested that closing arguments be recorded, and the trial court was not required to order sua sponte that such arguments of counsel be recorded. See OCGA § 17-8-5(a). Mondragon's argument is without merit.
 

 7. Mondragon claims that his trial counsel was ineffective because, prior to trial, his attorney initially represented both Lopez and Mondragon. Although Mondragon never raised the issue of ineffective assistance below, he received new counsel for his appeal after
 

 **286
 

 the notice of appeal was already filed in the trial court, and his appellate counsel has therefore raised the argument at the earliest practicable moment. See, e.g.,
 
 Grier v. State,
 

 262 Ga.App. 777
 
 , 780-781(3),
 
 586 S.E.2d 448
 
 (2003). Despite the fact that there was no motion for new trial hearing on ineffective assistance below (and this Court would generally remand the case for such a hearing under such circumstances), the record here is sufficient for this Court to resolve the issue of ineffective assistance, and we will therefore address it. See
 
 id. at 781
 
 (3),
 
 586 S.E.2d 448
 
 .
 

 To prove ineffective assistance, Mondragon must show that counsel's performance was deficient and that this deficient performance prejudiced his defense.
 
 Ellison v. State,
 

 242 Ga.App. 636
 
 , 638(7),
 
 530 S.E.2d 524
 
 (2000), citing
 
 Strickland v. Washington,
 

 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed.2d 674
 
 (1984). Here, however, the record conclusively reveals that Mondragon's original trial counsel's performance was not affected by his joint representation of Mondragon and Lopez prior to trial. When he sensed a potential conflict, Mondragon's counsel ceased representing both Mondragon and Lopez, before the trial began, thereby eliminating any chance of harming Mondragon at trial due to the conflict. Indeed, Lopez received separate counsel prior to trial, and Mondragon does not even argue on appeal that he was actually prejudiced by his counsel's initial joint representation of both him and Lopez. Mondragon merely contends that the situation carried the "potential" for harm to him. Mondragon cannot carry his burden of showing ineffective assistance of his original trial counsel. See
 
 Woods v. State,
 

 275 Ga. 844
 
 , 845(2),
 
 573 S.E.2d 394
 
 (2002) ("A defendant who does not object to joint representation to the trial court must show not only a conflict of interest, but that the conflict adversely affected his attorney's performance.") (citations omitted).
 

 8. In his final enumeration, Mondragon urges that he was not "present" during voir dire. Specifically, he argues that, despite the fact that he was physically in attendance, he was not present in a meaningful way because the court did not provide him with a translator to make sure that he understood the proceedings. The record reveals, however, that Mondragon's counsel conferred with Mondragon and announced in court that Mondragon did not need a translator for voir dire. Therefore, any alleged error due to the absence of a translator was of Mondragon's own making and does not provide any basis for reversal here. See, e.g.,
 
 Maxwell v. State,
 

 233 Ga.App. 419
 
 , 423(4)(b),
 
 503 S.E.2d 668
 
 (1998) ("[O]ne cannot complain about a ruling of the trial court which the party's own trial tactics or conduct procured or aided in causing.") (citation omitted).
 

 Judgments affirmed.
 

 SMITH, C.J., and RUFFIN, P.J., concur.