A97A0235. LITTLETON v. THE STATE.
(485 SE2d 230)

SMITH, Judge.

Jerome Littleton was convicted of the offenses of rape (OCGA § 16-6-1), burglary (OCGA § 16-7-1), aggravated stalking (OCGA § 16-5-91), and aggravated assault with a deadly weapon (OCGA § 16-5-21 (a) (2)). His motion for new trial was denied, and he appeals, contending the evidence was not sufficient to convict him. We disagree and affirm.

Construed to support the verdict, evidence was presented that the victim was Littleton's estranged wife and that in November 1994, a temporary protective order had been issued enjoining Littleton from "injuring, maltreating, molesting, harassing, harming, or abusing" the victim or their children and from going to her place of employment or within 100 yards of her residence. On April 3, 1995, the victim went to bed at approximately midnight. Her four young children and a friend of one of her sons were inside the house. Her four-year-old was in bed with her.

Some time later, she awoke to find Littleton "over my bed and he had his hand over my mouth and something to my neck." At the time of the incident, she could not specifically identify the object he held to her neck, but she knew it was a hard, blunt object. The victim described Littleton as being sweaty and having glassy eyes, as well as a foul odor about him. He instructed her not to say anything and not to move. She feared that she might have a heart attack because of heart problems she had been experiencing. Littleton talked about killing himself and then told her to remove her clothes, while he held the object to her neck and his hand over her mouth. He told her he had cut the telephone lines. She stated she complied because her son was in the bed and the other children were in the house; she did not know what Littleton held to her neck, and she thought that if she complied with his instructions, "maybe things would be better for us." She was "very fearful." According to the victim, after she removed her clothes, Littleton had sexual intercourse with her against her will. She then walked into her kitchen, followed by Littleton. The telephone lines had been cut, and one of her children climbed through a window and called the police from another residence.[1]

---

[1] The victim's son testified that between 11:30 p.m. and 12:30 a.m. he and his friend

The victim testified that after a police officer arrived, she saw Littleton lay something on a kitchen chair; when she walked toward the chair, she saw that the object was a knife. She had never seen the knife prior to the incident, and she testified that it was not one of her kitchen knives. She believed that the knife was the object Littleton held to her neck in the bedroom. The victim's son testified that after the police officer began talking with Littleton, he noticed a knife "hanging half out of [Littleton's] pocket" and later in the chair where Littleton was sitting during his conversation with the officer. The police officer identified a knife at trial as the knife on which Littleton had been sitting; she testified that it was under his left leg. This evidence was sufficient to convict Littleton of all charges.

1. To prove rape, the State must show "carnal knowledge of a female forcibly and against her will." OCGA § 16-6-1 (a). The victim did not state explicitly that the sexual intercourse with Littleton was done "forcibly." She did, however, testify concerning her fear for herself and her children, and it is well settled that "lack of resistance, induced by fear, is not legally cognizable consent but is force." *Curtis v. State*, 236 Ga. 362, 363 (1) (223 SE2d 721) (1976). She also testified that the intercourse was against her will.

Littleton's argument on appeal that the victim consented is unavailing. He points out that she waited until the next day to report the rape. The record also shows indisputably that on at least two other occasions Littleton slept at the victim's home in violation of the temporary protective order and had sexual intercourse with her. Any consideration of these facts, however, and any decision whether the victim consented to sexual intercourse on the night of April 3 or early morning hours of April 4, 1995, are matters solely within the province of the jury; they address themselves to credibility of the witnesses. See generally *Johnson v. State*, 214 Ga. App. 531 (448 SE2d 274) (1994). As for Littleton's argument that the only evidence of the rape came from the victim, corroboration of a victim's testimony is unnecessary to support a rape conviction. See, e.g., *Shirley v. State*, 188 Ga. App. 357, 361 (2) (373 SE2d 257) (1988). Because the victim described acts constituting the essential elements of rape — force and penetration against her will — evidence was presented authorizing a rational trier of fact to find Littleton guilty of rape under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d

---

heard the kitchen window "fall in" and the sound of someone's foot stepping into the kitchen sink. They also heard the refrigerator being opened and movement as if someone were sitting on the couch. Being fearful, the boys hid for 30 to 45 minutes before they went into the victim's bedroom, where they discovered Littleton sitting on the side of the victim's bed with his zipper open. The victim's son testified that his mother signalled him to call the police and that he woke his sister and sent her through a window to call the police; their telephone lines had been cut.

560) (1979).

2. As for Littleton's conviction on the charge of aggravated assault with a deadly weapon, a knife, OCGA § 16-5-21 (a) (2) provides that one commits that crime when he or she assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." Id. Although the victim did not initially know the exact identity of the "blunt, hard object" held to her neck, she testified that shortly after the incident she realized that the object was an unfamiliar knife. This evidence, in addition to her son's testimony that he saw the knife hanging from Littleton's pocket, and the police officer's testimony that the knife was hidden under Littleton's leg, was sufficient circumstantial evidence to enable a rational trier of fact to determine that the State had excluded all reasonable hypotheses, except that of Littleton's guilt. See generally *Harris v. State*, 223 Ga. App. 661, 662 (478 SE2d 458) (1996) (issue of whether State met burden of excluding other reasonable hypotheses is question for jury).

3. With regard to Littleton's burglary conviction, the State was required to prove that Littleton entered the victim's house "without authority and with the intent to commit a felony or theft therein." OCGA § 16-7-1 (a). The evidence is in dispute concerning whether Littleton broke in through a window or used his own key to make his entry. This dispute is immaterial, however, because evidence was presented that he entered the house without authority or the victim's permission. Whether he intended to commit a felony inside the victim's house was for the factfinder to determine based on the facts and circumstances proved. *Igle v. State*, 223 Ga. App. 498, 500 (3) (478 SE2d 622) (1996). As noted in Division 2, evidence was presented that Littleton committed an aggravated assault inside the victim's house. It follows that the jury was authorized to determine that at some point before he entered the house or while he remained in it, he intended to commit the aggravated assault.[2] See *Hewatt v. State*, 216 Ga. App. 550, 551 (2) (455 SE2d 104) (1995) (requisite intent to commit felony need not be formed at moment of entry but could have been formed while perpetrator "remained on the premises"); *Griffin v. State*, 148 Ga. App. 311 (251 SE2d 161) (1978).

4. Finally, Littleton's conviction for aggravated stalking was supported by the evidence presented. One commits aggravated stalking

---

[2] Although rape is also a felony, and we have concluded that sufficient evidence was presented to support the jury's conviction on the rape charge, the indictment specifically charged Littleton with entering the victim's house without authority and with intent to commit aggravated assault therein. We therefore focus our analysis of the burglary on evidence of aggravated assault, rather than rape.

when he or she "follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person" in violation of a temporary protective order or certain other enumerated orders. OCGA § 16-5-91 (a). "[T]he term 'harassing and intimidating' means a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm to himself or herself or to a member of his or her immediate family, and which serves no legitimate purpose." OCGA § 16-5-90 (a).

It is undisputed that a temporary protective order was issued against Littleton on behalf of the victim and their children in late 1994. Although the victim and the children allowed Littleton to enter the victim's home prior to the night of April 3, the evidence showed that Littleton on that date did not have permission to come inside the victim's home and had been informed some weeks before that he was no longer allowed inside the house. Furthermore, in addition to the victim's testimony that she was afraid and that her telephone wires were cut, the evidence showed that Littleton had the victim's house "under surveillance" within the meaning of the statute. Evidence was presented, via a neighbor's testimony, that Littleton drove his truck, without the headlights illuminated, down the street where the victim lived and also sat inside the truck, with the headlights off, on the victim's street for a period of time on the night of the attack. In addition, at least one of the victim's children was "kind of scared" by Littleton's presence in the house. Viewing this evidence in the light most favorable to the verdict, the jury was authorized to find Littleton guilty of aggravated stalking under OCGA § 16-5-91 (a). See *Hooper v. State*, 223 Ga. App. 515 (478 SE2d 606) (1996).

*Judgment affirmed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MARCH 18, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*Letitia B. Delan*, for appellant.
Jerome Littleton, *pro se.*
*J. Tom Morgan, District Attorney, Barbara B. Conroy, Anne M. Long, Assistant District Attorneys*, for appellee.