**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 25, 2012

# In the Court of Appeals of Georgia

A12A0232. ELLIS v. THE STATE.

MILLER, Judge.

Following a jury trial, Anthony Ellis was convicted of aggravated assault (OCGA § 16-5-21 (a) (2)), aggravated sodomy (OCGA § 16-6-2 (a) (2)), rape (OCGA § 16-6-1 (a) (1)), and false imprisonment (OCGA § 16-5-41 (a)). The trial court denied Ellis's motion for new trial, as amended. Ellis now appeals, contending that (1) the evidence was insufficient to support his convictions; (2) the State failed to provide him with information pertaining to the victim's criminal history or mental health status; (3) the trial court erred in admitting Ellis's custodial statements; (4) the trial court erred in denying his motion for mistrial where certain portions of the jury charge were allegedly interrupted by courtroom distractions; (5) he was denied a fair trial because the courtroom deputy allegedly made inappropriate gestures and facial

expressions in front of the jury; (6) the trial court erred in excluding witness testimony regarding the victim's prior false allegations of sexual misconduct; (7) the trial court erred in failing to allow Ellis to present evidence in mitigation of his sentence; and (8) the trial court erred in denying his motion for new trial based on Ellis's claims of ineffective assistance of counsel. For the reasons set forth below, we affirm.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Footnote omitted.) *Goss v. State*, 305 Ga. App. 497 (699 SE2d 819) (2010). "It is solely within the purview of the factfinder to weigh conflicting evidence and judge the credibility of the witnesses." (Footnote omitted.) *Benyard v. State*, 311 Ga. App. 127 (714 SE2d 746) (2011).

So viewed, the evidence shows that the victim was Ellis' ex-girlfriend at the time of the relevant incident, April 17, 2008. On that day, the victim was returning to her mother's home, where she resided at the time, when Ellis jumped into her vehicle with a crowbar-type weapon and grabbed the victim's face. When the victim's mother heard her screaming, she came out of the house and proceeded to engage in a "tug-of-war" with Ellis to get the victim out of the vehicle. The victim's mother was

2

ultimately successful, whereupon the victim and her mother ran into the house, and the victim went to call 911. Ellis followed them into the house, kicked the door in, and grabbed a knife from the kitchen. When Ellis raised the knife to the victim's mother, the victim offered to leave with Ellis to prevent him from doing any harm to her mother. Ellis pushed the victim's mother to the ground and left with the victim; the victim's mother then called the police.

Ellis took the victim to his father's house in Henry County. Ellis held the victim in a back bedroom and ordered the victim to take her clothes off. The victim complied because Ellis had a knife in his hand. Ellis initially attempted to have anal intercourse with the victim, but when that proved unsuccessful, Ellis had the victim turn onto her back and held a knife in his hand while he told her to open her legs. Ellis then had vaginal intercourse with the victim against her will. Ellis eventually withdrew his penis from the victim's vagina in order to ejaculate into the victim's mouth. Ellis told the victim to get up and put her clothes back on, and they went into the living room together, where he told the victim to spit out the semen in her mouth. The victim felt that should could not leave the house because Ellis had a knife and she was uncertain about his mental state.

Meanwhile, the police responded to the 911 call placed by the victim's mother. The officers located Ellis and the victim at Ellis's father's house. When an investigator approached the house, Ellis cracked open the door and said he had a gun. Ellis engaged the responding officers in a stand-off that lasted for several hours. Eventually, the officers were able to negotiate the victim's release from the house. Once the victim was released, the police immediately entered the house and took Ellis into custody.

1. Ellis contends that the evidence was insufficient to convict him beyond a reasonable doubt of aggravated assault, aggravated sodomy, rape, and false imprisonment. After viewing the evidence in the light most favorable to the prosecution, the relevant question on appeal is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). We address each of Ellis's convictions in turn.

(a) *Aggravated assault.* The indictment alleges that Ellis committed aggravated assault by making an assault upon the victim with a knife, a deadly weapon, by holding the knife in a threatening manner toward the victim. Ellis claims that the evidence was insufficient to support his conviction on this count because there was

no corroboration that Ellis used the knife in a threatening manner and because there was no evidence of a wound to the victim's thighs. Ellis's claims are without merit.

A person commits the offense of aggravated assault when he assaults[1] with a deadly weapon, when used offensively against a person, is likely to or actually does result in serious bodily injury. OCGA § 16-5-21 (a) (2).

The victim testified that Ellis held a knife in his hand when he told her to take her clothes off, and when he told her to open her legs so that he could have vaginal intercourse with her against her will. This testimony alone was sufficient to support the conviction. See OCGA § 24-4-8. The fact that there was no evidence of a wound to the victim's thighs does not change our conclusion. See *Gilbert v. State*, 209 Ga. App. 483, 484 (1) (433 SE2d 664) (1993) ("[T]here is no requirement that the victim actually be injured by the deadly weapon before a conviction for aggravated assault is authorized.") (citation and punctuation omitted).

Ellis also contends that venue was not proven on the aggravated assault charge because some of the evidence was from a different county. This argument is likewise

---

[1] Assault is defined in OCGA § 16-5-20 in pertinent part as when a person either "(1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."

without merit. "Generally, a criminal action must be tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence." (Citation and punctuation omitted.) *White v. State*, 312 Ga. App. 421, 423 (1) (a) (718 SE2d 335) (2011). Here, the victim testified that the aggravated assault offense occurred at Ellis's father's house, which was located in Henry County. The responding officer likewise testified that the house was located in Henry County. This testimony was sufficient evidence to prove venue in Henry County.

Finally, Ellis contends that the victim's testimony should be discounted as incompetent because of the victim's potential mental illness.[2] Even assuming Ellis's claim as true,

> a mental disease does not necessarily render a witness incompetent to testify. . . . If the allegedly incompetent person understands her obligation to tell the truth and is capable of giving material evidence upon the subject matter in question, she is competent to testify, and it is

---

[2] Ellis similarly contends that the victim's testimony was insufficient to sustain his convictions because his trial counsel failed to impeach the victim's credibility with evidence of her prior conviction for theft by shoplifting. Ellis's contention is without merit. As discussed in Division 8 (a) below, Ellis failed to show that this conviction would have been admissible for impeachment purposes at trial.

6

then up to the jury to determine the appropriate weight to give her testimony.

(Citations and punctuation omitted.) *Dorsey v. State*, 206 Ga. App. 709, 713 (3) (426 SE2d 224) (1992). Here, there was no indication that the victim did not understand her obligation to tell the truth, and it was therefore up to the jury to determine the credibility of her testimony. See id. Moreover, "absent an objection to competence, [as is the case here,] it is not error to allow a witness to testify without first determining her competence." (Citation and punctuation omitted.) *Austin v. State*, 286 Ga. App. 149, 151 (1) n.3 (648 SE2d 414) (2007).

Therefore, the evidence was sufficient to support Ellis's aggravated assault conviction.

(b) *Aggravated sodomy.* The indictment alleges that Ellis committed aggravated sodomy by unlawfully performing a sexual act involving his sexual organ and the victim's mouth. Ellis contends that the evidence was insufficient to sustain his conviction on this count because there was "no evidence of physical trauma or sexual assault to that area." We disagree.

Sodomy is any sexual act involving the sex organs of one person and the mouth or anus of another. See OCGA § 16-6-2 (a) (1). "A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person[.]" OCGA § 16-6-2 (a) (2). The victim testified that while holding a knife in his hand, and after having vaginal intercourse with her against her will, Ellis put his penis into her mouth to ejaculate. The victim also testified that she did everything Ellis wanted her to do because she did not feel like she had a choice, specifically pointing to the fact that he had a knife and that she was unsure as to his mental state. Her testimony alone was sufficient to support a finding of guilt beyond a reasonable doubt. See *Summerour v. State*, 242 Ga. App. 599, 601 (1) (530 SE2d 494) (2000); *Thompson v. State*, 203 Ga. App. 339 (1) (416 SE2d 755) (1992) (citing OCGA § 24-4-8). Contrary to Ellis's contentions, "evidence of physical trauma or sexual assault" to the victim's mouth was not necessary to sustain Ellis's conviction for aggravated sodomy. Cf. *Green v. State*, 249 Ga. App. 546, 549 (1) (b) (547 SE2d 569) (2001) ("Proof of penetration is not required for a conviction of sodomy. All that is required is some contact.") (citations and punctuation omitted). As there is sufficient evidence to support the jury's verdict as to this count, we will not disturb it.

(c) *Rape.* Ellis contends that the evidence was insufficient to support this charge, citing the absence of evidence corroborating the victim's testimony that the sexual intercourse with Ellis was non-consensual. Ellis's argument is unavailing.

To prove the offense of rape, the State must show that a defendant had "carnal knowledge of . . . a female forcibly and against her will." OCGA § 16-6-1 (a) (1). Here, the victim testified that she kept her legs tightly closed to prevent Ellis from having sexual intercourse with her, and that she opened her legs only because Ellis had a knife in his hand. "[L]ack of resistence, induced by fear, is not legally cognizable consent but is force." (Citation and punctuation omitted.) *Littleton v. State*, 225 Ga. App. 900, 901 (1) (485 SE2d 230) (1997). The victim also testified that Ellis had sexual intercourse with her against her will. "As for [Ellis's] argument that the only evidence of the rape came from the victim, corroboration of a victim's testimony is unnecessary to support a rape conviction." (Citation and punctuation omitted.) Id. In any event, there was in fact forensic evidence corroborating the victim's account of vaginal penetration. The foregoing evidence was sufficient for the jury to find Ellis guilty of rape. See id.

(d) *False imprisonment.* Ellis argues that the evidence was insufficient to support his conviction on the false imprisonment charge because there was no

independent corroboration showing that Ellis detained the victim against her will. Again, Ellis's argument lacks merit.

"The essential elements of the crime of false imprisonment are: violating the personal liberty of another, by arresting, confining or detaining a person, without legal authority." *Austin*, supra, 286 Ga. App. at 151 (1) (citing OCGA § 16-5-41 (a)). Here, the victim testified that she initially went with Ellis only because she did not want him to hurt her mother; that she did everything Ellis wanted her to do because she felt like she had no choice; and that after Ellis finished raping her, she felt like she could not leave the house because Ellis had a knife and his mental state appeared unstable. In addition, the responding officers attested to Ellis's hours-long detention of the victim before he was willing to release her. One of the responding officers also testified that the victim was "visibly traumatized," physically shaking, and crying upon her release from the house. This evidence was more than sufficient to support the false imprisonment conviction. See, e.g., *Brigman v. State*, 282 Ga. App. 481, 482-483, 484 (1) (639 SE2d 359) (2006) (holding that testimony of victim alone, coupled with the evidence surrounding the hours-long detention in one room, amply supported the jury's conviction on the charge of false imprisonment); *Scott v. State*, 268 Ga. App. 889, 891 (a) (602 SE2d 893) (2004) (concluding that evidence was

10

sufficient to support conviction for false imprisonment where the victim testified that she got into the defendant's vehicle to keep him from hitting her and because she was afraid he would kill her if she refused, and where an eyewitness testified that victim was crying and bleeding after ordeal).

In sum, there is no merit to Ellis's insufficiency claims, and we affirm his convictions for aggravated assault, aggravated sodomy, rape, and false imprisonment.

2. Ellis contends that the State failed to provide him with information pertaining to the victim's criminal history or mental health status, in violation of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). We disagree.

> To prevail on a *Brady* claim, a defendant must show that the State possessed evidence favorable to the defendant; defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different.

(Citation omitted.) *Blackshear v. State*, 285 Ga. 619, 622 (5) (680 SE2d 850) (2009); see also *Belins v. State*, 210 Ga. App. 259, 261 (2) (435 SE2d 675) (1993) ("Impeachment evidence showing bias or interest on the part of a key prosecution witness falls within the *Brady* rule.") (citations, punctuation, and emphasis omitted).

11

Here, pretermitting the issue of whether Ellis met his burden with respect to the other prongs, we find no reversible error because Ellis failed to satisfy the first prong. That is, there is no evidence that the State was in possession of any criminal history regarding the victim or any information concerning the victim's mental health history. "*Brady* does not impose an affirmative obligation on the prosecution to seek out information for the defense, even if such information is more accessible to the prosecution than to the defense." (Citations and punctuation omitted.) *Ferguson v. State*, 226 Ga. App. 681, 685 (3) (487 SE2d 467) (1997). Therefore, we find no merit to this enumeration of error.

3. Ellis next argues that the trial court erred in allowing the admission of his custodial statements, because they were not made willingly, voluntarily, or with informed consent. Again, there is no merit to Ellis's claim of error.

> The trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson-Denno* hearing will be upheld on appeal.

(Citations and punctuation omitted.) *Sosniak v. State*, 287 Ga. 279, 279-280 (1) (695 SE2d 604) (2010) (citing *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)).

The testimony at the *Jackson-Denno* hearing in this case showed the following. Ellis was interviewed on April 17, 2008, after he was in custody at the Henry County Police Department. Upon entering the interview room, Detective Reid with the Henry County Police Department introduced himself, removed Ellis's handcuffs, and told Ellis why he wanted to speak with him. Detective Reid testified that Ellis was not free to leave at that time. In response to Detective Reid's questions, Ellis indicated that he was not under the influence of drugs or alcohol, that he could read and write English, and that he had completed the twelfth grade. Thereafter, Detective Reid, reading from a standardized form, advised Ellis of his *Miranda*[3] rights and had Ellis read the form as well. When asked whether he understood each of those rights, Ellis indicated that he did, and he initialed beside each right on the standardized form. Ellis then agreed to waive his rights and speak willingly with the detective. Detective Reid testified that he did not threaten Ellis in any way to make a statement after signing the

---

[3] See generally *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

13

waiver form. Thereafter, Ellis made statements to Detective Reid concerning the events that had transpired before and at the house in Henry County. After speaking with Ellis for approximately 15 minutes, Detective Reid asked Ellis to write a statement, but Ellis refused without the presence of his attorney. The interview ended at that point.

The foregoing evidence authorized the conclusion that Ellis made a knowing, intelligent, and voluntary decision to speak with the detective and give his oral statements. Cf. *Gilliam v. State*, 268 Ga. 690, 693 (3) (492 SE2d 185) (1997); *Williams v. State*, 214 Ga. App. 423, 424-425 (447 SE2d 716) (1994). Ellis nevertheless argues that he did not understand that he was being charged with aggravated assault, aggravated sodomy, rape, and false imprisonment. There is no merit to Ellis's contention. Notably, Detective Reid testified that he advised Ellis of the accusations against him as of the time of the interview. "Moreover, a law enforcement officer's failure to advise a suspect as to the crimes about which he is to be questioned prior to the suspect's waiver of his *Miranda* rights is not relevant to the question of whether the suspect's waiver was knowing and voluntary." (Punctuation and footnote omitted.) *Rivera v. State*, 279 Ga. App. 1, 4 (2) (630 SE2d 152) (2006); see also *Gaines v. State*, 179 Ga. App. 623, 623-624 (1) (347 SE2d 673) (1986) ("The

14

police have no duty, as part of the *Miranda* warnings, to inform a suspect of the crime which they are investigating."). Thus, it was not error for the trial court to rule in favor of admitting Ellis's custodial statements.

4. Ellis contends that the trial court erred in denying his motion for mistrial on the grounds that certain portions of the trial court's jury charge were interrupted by courtroom distractions.[4] We disagree.

"Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." (Citation and punctuation omitted.) *Watson v. State*, 289 Ga. 39, 42 (7) (709 SE2d 2) (2011).

Here, Ellis complains that a probation officer walked into the courtroom during the reasonable doubt jury charge, and that a beeper sounded during the jury charge

---

[4] Embedded as a footnote in the argument section of his brief, Ellis also contends that the trial court erred in denying Ellis's motion for mistrial because lesser included offenses were not included in the jury charges. "But an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors." (Citation and footnote omitted.) *Tucker v. State*, 299 Ga. App. 278, 280 (2) (683 SE2d 356) (2009). Accordingly, we decline to review this argument on appeal. To the extent this issue pertains to Ellis's claim of ineffective assistance of counsel, however, we address that claim in Division 8 (d) below.

on the voluntariness of a defendant's statements. Ellis contends that he was denied a fair trial as a result of these distractions. Ellis, however, has presented no evidence that the jury was in fact distracted or confused about the jury charges that were allegedly interrupted. Indeed, the trial court later indicated that it stopped reading the reasonable doubt jury charge when the probation officer walked into the courtroom. The trial court also noted that the beeper "was as far away as you can get from the jury in this room," and that the trial court did in fact pause in reading the jury charge while the owner of the beeper removed himself from the courtroom (which is reflected in the record). Moreover, since a copy of the charge as a whole was available to the jury during deliberations, any juror who was in fact distracted during a particular charge would have had an opportunity to reread those charges. Finally, the record does not reflect, and nor could the trial court recall, that the jury requested clarification on any of the charges. Based on the foregoing circumstances, we cannot say that the trial court abused its discretion in denying Ellis's motion for mistrial.

5. Ellis contends that he was denied a fair trial because the courtroom deputy made alleged inappropriate gestures and facial expressions in front of the jury.[5] We disagree.

"When a trial court determines that a juror has received an improper communication it may, but is not required to, determine whether the communication had in fact prejudiced the juror before granting a mistrial." (Citations and punctuation omitted.) *Reed v. State*, 267 Ga. 482, 483 (1) (480 SE2d 27) (1997); see also *Cooke v. State*, 230 Ga. App. 326, 327 (496 SE2d 337) (1998).

Ellis first raised this issue at his motion for new trial hearing. The only evidence he proffered in support of his claim was his own testimony and that of his mother that they had witnessed the deputy shaking his head while Ellis was testifying and that the jury could have seen him. However, as the trial court pointed out at the motion for new trial hearing, neither Ellis, his counsel, nor his mother ever notified the court, or otherwise objected to, any alleged inappropriate expressions or gestures on the part of the deputy, either at the time it occurred or any other point during the

[5] Ellis again seeks to expand his enumerations of error to include a somewhat incoherent claim regarding the trial court's finding as to the completeness of the trial transcript. As we noted previously, however, Ellis cannot expand his enumerations of error through argument in his brief. See *Tucker*, supra, 299 Ga. App. at 280 (2).

trial. Nor does the trial record reflect any improper behavior by the deputy during Ellis's testimony. Moreover, the trial court had no memory or knowledge of such behavior by the deputy during the trial. Based on the foregoing, the trial court denied Ellis's motion for new trial on this ground. And given the absence of any evidence that the jury, either individually or as a group, in fact witnessed any alleged gestures or facial expressions made by the deputy during Ellis's testimony, we cannot say that the trial court abused its discretion in doing so.

6. Ellis argues that the trial court erred at the motion for new trial hearing insofar as it excluded witness testimony regarding the victim's allegedly prior false accusations of sexual abuse of her daughter. We disagree.

Ellis contends that this testimony was relevant to the victim's credibility and showed that the victim had a pattern of making false accusations of sexual misconduct.[6] However, "testimony which is merely impeaching is irrelevant in the context of the hearing on a motion for new trial. The time for making a proffer of the

_____

[6] See *Osborne v. State*, 291 Ga. App. 711, 712-713 (2) (662 SE2d 792) (2008) ("[E]vidence that the witness made prior false allegations of sexual misconduct by persons other than the defendant . . . is admissible to attack the credibility of the witness and as substantive evidence tending to prove that the charged offense did not occur.") (citations and punctuation omitted).

witness'[s] impeaching testimony was at trial, not at the hearing on the motion for new trial." (Citation and punctuation omitted.) *Stephens v. State*, 264 Ga. 761, 763 (7) (450 SE2d 192) (1994).

Furthermore, to the extent this witness testimony was relevant to a claim of ineffective assistance of counsel, insofar as Ellis contends that he sought to show that failed to call witness at trial, any error in excluding the testimony at the motion for new trial hearing was harmless. Indeed, "[a] strong presumption exists that counsel's conduct falls within the broad range of professional conduct." (Citation and punctuation omitted.) *Coggins v. State*, 275 Ga. 479, 482 (3) (569 SE2d 505) (2002). Here, despite Ellis's claim otherwise, the trial court was entitled to believe counsel's testimony that Ellis never shared with him any information about the victim's prior false allegations of sexual misconduct. See id. Thus, Ellis could not show that his trial counsel was deficient in failing to investigate a matter of which he was unaware at the time. Consequently, any error in excluding testimony about the matter at the motion for new trial hearing was harmless.

7. Ellis contends that the trial court erred in failing to allow him the opportunity to present evidence in mitigation of his sentence. Ellis specifically claims that he had several witnesses prepared to speak on his behalf in mitigation of sentencing, but that

the witnesses were not presented at the pre-sentence hearing. Ellis's enumeration is without merit.

"OCGA § 17-10-2 provides that a trial judge must conduct a pre-sentence hearing to determine punishment, and the record shows that such a hearing was held." *Scott v. State*, 213 Ga. App. 84, 88 (5) (444 SE2d 96) (1994) (rejecting defendant's claim that trial court erred in failing to reschedule pre-sentence hearing to allow her an opportunity to possibly present witnesses to testify in mitigation of her punishment where record showed that pre-sentence hearing was held). During the hearing in this case, the trial court specifically asked Ellis's counsel if he had anything to present to assist the court in fixing punishment. Trial counsel provided some argument as to sentencing, but made no indication that he had evidence or witnesses to present in mitigation of Ellis's punishment. Significantly, the trial court did not rule that Ellis could not present witnesses to testify on his behalf; nor did Ellis make an offer of proof as to the content of the alleged witnesses' testimony. Cf. *Wainwright v. State*, 208 Ga. 777, 780-781 (3) (432 SE2d 555) (1993) (rejecting defendant's claim that trial court erred in refusing to allow him to testify on his own behalf in mitigation of his sentence where the trial court never made a ruling that defendant could not testify, and where defendant did not object or request to make an offer of proof as to the

content of his testimony). When the trial court announced the sentence and the reasons for it, Ellis made no objection.

Given that a pre-sentence hearing was held, coupled with the fact that Ellis declined any opportunity to present his alleged witnesses in mitigation of punishment and then failed to raise any objection when the court imposed its sentence, we find no merit to his claim of error. See *Evans v. State*, 240 Ga. App. 297, 300 (6) (523 SE2d 103) (1999).

8. Finally, Ellis argues that the trial court erred by denying his motion for new trial based on his claims of ineffective assistance of counsel. We disagree.

To establish ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), a criminal defendant bears the burden of showing "that counsel's performance was deficient and that the deficient performance so prejudiced defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." (Citations omitted.) *Johnson v. State*, 287 Ga. 767, 769 (2) (700 SE2d 346) (2010). However, a court addressing the ineffective assistance issue is not required "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, supra, 466 U. S. at 697 (IV). "In particular, a court need not determine

21

whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. "When reviewing a trial court's ruling on an ineffective assistance of counsel claim, we defer to its factual findings unless they are clearly erroneous, but we review the court's legal conclusions de novo." (Citation omitted.) *Strong v. State*, 308 Ga. App. 558, 561 (707 SE2d 914) (2011).

Here, Ellis enumerates a lengthy list of errors allegedly committed by trial counsel. We address each in turn.[7]

(a) Ellis claims that trial counsel was ineffective in failing to adequately investigate the victim's criminal and mental health history. Ellis relies solely upon the victim's testimony at the motion for new trial hearing – that she had a conviction for theft by shoplifting, and that she had been hospitalized at a mental institution after the incident with Ellis.

With respect to the victim's criminal history, OCGA § 24-9-84.1 (a) pertinently provides that evidence of a witness's prior conviction shall be admitted if (i) the

---

[7] We decline, however, to address Ellis's ineffectiveness claims that are not set forth in his enumeration of errors – specifically, those regarding the videotape of the victim's interview with the investigators, the number of law enforcement witnesses produced by the State, and the use of character witnesses during Ellis's pre-sentence hearing. See *Tucker*, supra, 299 Ga. App. at 280 (2).

22

crime was punishable by death or imprisonment of one year or more if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect; or (ii) the crime involved dishonesty or making a false statement, regardless of the punishment that could be imposed for such offense. See OCGA § 24-9-84.1 (a) (1), (3). With respect to a conviction for theft by shoplifting, the punishment imposed depends upon certain factors set forth in the statute, including the dollar amount of the stolen property and whether the defendant had previous shoplifting convictions. See OCGA § 16-8-14 (b). Moreover, because "theft is not a crime that necessarily involves dishonesty or making a false statement of the sort contemplated by this statutory subsection[,] . . . the party seeking to use a misdemeanor theft conviction as impeachment evidence must show that the conviction involved fraud or deceit." (Citations and punctuation omitted.) *Boatright v. State*, 308 Ga. App. 266, 270-271 (1) (c) (707 SE2d 158) (2011). Here, without more information or evidence as to the factual basis for the victim's prior theft by shoplifting conviction or the punishment imposed, Ellis has failed to show that this conviction would have been admissible for impeachment purposes at trial. Cf. id. at 271. Accordingly, Ellis cannot show that he was prejudiced by trial counsel's failure

23

to investigate or present evidence of the victim's prior theft by shoplifting conviction. Cf. id. at 271 & n.4.

With respect to the victim's prior mental health history, trial counsel testified at the motion for new trial hearing that he did not believe that any mental health issues of the victim were relevant to Ellis's defense, given the nature of the crimes charged against him. Indeed, "[w]hether to impeach prosecution witnesses and how to do so are tactical decisions." (Citation and punctuation omitted.) *McMichael v. State*, 305 Ga. App. 876, 878 (700 SE2d 879) (2010). And "[t]his Court will not, with benefit of hindsight, second-guess defense trial strategies therein. Absent a strong showing that counsel's actions were not reasonable, we will presume that these strategies were not deficient." (Citation and punctuation omitted.) *Raymond v. State*, 298 Ga. App. 549, 550-551 (1) (a) (680 SE2d 598) (2009). In light of trial counsel's testimony, Ellis has failed to show that trial counsel's decision not to use the victim's mental health history to impeach her credibility was an unreasonable one.

(b) Ellis next contends that trial counsel was ineffective in failing to produce an eyewitness, Ellis's son, to a prior alleged aggravated assault incident between Ellis and the victim. Ellis relies upon the testimony of his son at the motion for new trial hearing – that he was present on the date when the victim instigated a fight with Ellis

24

and threw a lamp at him. However, his son's testimony would have been cumulative of testimony provided by Ellis at trial. And "[t]rial counsel's failure to present cumulative evidence does not amount to ineffective assistance." (Punctuation and footnote omitted.) *Lyons v. State*, 269 Ga. App. 27, 31 (3) (d) (602 SE2d 917) (2004).

(c) Ellis claims that trial counsel was ineffective in failing to object to the State's similar transaction evidence, specifically Ellis's prior conviction for simple battery. As stated in the trial court's similar transaction instruction given to the jury, this evidence was admitted for the limited purpose of showing the nature of the relationship between Ellis and the victim. Ellis contends that because the conviction was a result of a nolo contendere plea, it should not have been used against Ellis pursuant to OCGA § 17-7-95 (c).[8] Pretermitting the question of whether trial counsel was deficient in failing to object to the admission of this evidence, however, Ellis has failed to establish prejudice as a result of any failure on the part of trial counsel. Notably, in light of the overwhelming evidence described in Division 1 above, Ellis cannot show that the admission of the similar transaction evidence resulted in a guilty

---

[8] OCGA § 17-7-95 (c) provides in relevant part that "[e]xcept as otherwise provided by law, a plea of nolo contendere shall not be used against the defendant in any other court or proceedings as an admission of guilt or otherwise or for any purpose[.]"

25

verdict. See *Moore v. State*, 301 Ga. App. 220, 225 (3), 227-228 (6) (687 SE2d 259) (2009) (concluding that any error in admitting similar transaction evidence was harmless where the overwhelming evidence of the defendant's guilt made it highly unlikely that the admission of the similar transaction evidence contributed to the verdict, and that as a result, defendant could not establish prejudice from trial counsel's failure to object to the similar transaction evidence).

(d) Ellis argues that trial counsel was ineffective in failing to request jury instructions on the lesser included offense of battery and any other lesser included offenses. At the motion for new trial hearing, trial counsel testified that based on the evidence and the fact that Ellis's entire defense was based on the alleged consent of the victim, he did not believe there was a valid basis for requesting any lesser included offenses. Indeed, the failure to request a jury instruction on a lesser included offense cannot support a claim of ineffective assistance where, as here, the evidence does not reasonably raise the issue that Ellis may be guilty *only* of the lesser crimes. See *Gross v. State*, 312 Ga. App. 362, 365 (2) (718 SE2d 581) (2011); *Chancey v. State*, 258 Ga. App. 319, 321 (4) (a) (574 SE2d 383) (2002).

(e) Finally, Ellis claims that trial counsel was ineffective in failing to use an expert witness regarding the issue of consensual intercourse. "The decision whether

26

to call an expert witness is a matter of trial strategy within the broad range of professional conduct afforded trial attorneys." (Citation omitted.) *Davis v. State*, 290 Ga. 584, 586 (2) (a) (723 SE2d 4631) (2012). Here, trial counsel testified that he did not believe an expert witness would have been helpful to Ellis's defense. Moreover, Ellis failed to make a proffer of any favorable evidence that could have been elicited if an expert witness had been called. See *Hendricks v. State*, 290 Ga. 238, 241-242 (4) (b) (719 SE2d 466) (2011). Thus, Ellis failed to meet his burden of showing both deficient performance on the part of trial counsel, and prejudice arising from such performance. See id.

In conclusion, the trial court did not err in denying Ellis's motion for new trial on the grounds of his ineffective assistance of counsel claims.

*Judgment affirmed. Mikell, P. J., and Blackwell, J., concur.*