**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 24, 2014

# In the Court of Appeals of Georgia

A14A0340. BARLOW v. THE STATE.

BARNES, Presiding Judge.

After police officers seized drugs from a residence in Spalding County, Frederick Lamar Barlow was indicted for several drug-related offenses, including trafficking in cocaine and possession of marijuana with intent to distribute. Barlow moved to suppress the drugs seized from the residence, to reveal the identity of the confidential informant who provided information for the search warrant of the residence, and to reveal any deal reached between the State and the informant. Following an evidentiary hearing, the trial court denied the motions upon finding that Barlow had no legitimate expectation of privacy in the residence and thus lacked standing to challenge the search. Barlow subsequently was tried and convicted before a jury of multiple drug-related offenses. Barlow then filed a motion for new trial, asserting, among other things, that an inculpatory statement he made to the police was

improperly admitted at trial and that his trial counsel rendered ineffective assistance. Following a hearing that Barlow was not permitted to attend, the trial court denied the motion for new trial, leading to this appeal.

On appeal, Barlow contends that the trial court erred (1) by denying his motion to suppress the evidence seized from the residence on the ground that he lacked standing; (2) by denying his motions to reveal the identity of, and any deals reached with, the confidential informant; (3) by admitting his inculpatory statement to the police without first conducting a hearing outside the presence of the jury and determining the voluntariness and admissibility of the statement; (4) by denying his claims of ineffective assistance of counsel; and (5) by refusing to permit him to attend and testify in support of his ineffective assistance claims at the hearing on his motion for new trial. For the reasons discussed below, we affirm.

1. Barlow contends that the trial court erred in denying his motion to suppress the evidence seized from the residence. The trial court, however, was authorized to find that Barlow lacked standing to challenge the search and seizure at issue.

> In considering an appeal from [the] denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's

2

determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous. Moreover, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial.

(Citation and punctuation omitted.) *Reid v. State*, 321 Ga. App. 653 (742 SE2d 166) (2013).

So viewed, the evidence showed that police officers received a tip from a confidential informant that a man named "Fred" was selling drugs in the Sherbrooke Way neighborhood in Spalding County. The informant provided a physical description of "Fred" and noted that he always wore latex gloves when handling cocaine. The informant also told the officers that "Fred" drove a green Ford Thunderbird and provided them with directions to the residence in the Sherbrooke Way neighborhood where the drugs were sold.

During a police interview, the confidential informant identified Barlow in a photograph as the man he knew as "Fred." Based on the information provided by the informant, the officers also were able to identify the Sherbrooke Way residence where the drug activity was being conducted. Tax records reflected that the residence was owned by Barlow's mother and stepfather.

At the direction of the officers, the confidential informant conducted two controlled buys of cocaine from Barlow at the Sherbrooke Way residence. Following the controlled buys, the officers applied for and obtained a search warrant for the residence. During the execution of the search warrant, the officers found 375.8 grams of marijuana and 79.38 grams of powder cocaine. A large amount of the marijuana and a set of digital scales were found in a utility room inside the garage; two bags of marijuana were found in two women's purses in a hall closet near the front door; and the powder cocaine, a second set of digital scales, and latex gloves were found in a hallway bathroom.[1] Officers also found a pistol in one of the bedrooms.

Barlow was not present at the residence when the officers entered to execute the search warrant. Neither were Barlow's mother and stepfather present at the residence. However, Barlow's brother was at the residence when the search occurred and was detained by the officers.

Several officers were strategically placed on roadways around the Sherbrooke Way residence to conduct surveillance as the search was being executed. They were told to be on the lookout for Barlow driving a green Ford Thunderbird. One of the

[1] An officer testified that based on his experience, drug dealers often use latex gloves when handling cocaine to prevent the drug from being absorbed into their skin.

4

officers observed Barlow driving a car matching that description on a road near the residence. The officer initiated a traffic stop after he observed Barlow fail to maintain his lane of travel. Another officer conducted a free air search around Barlow's car with a drug-sniffing dog while the initial traffic stop was in progress. After the dog alerted to the odor of narcotics, the officers searched Barlow's car and found baggies, digital scales, latex gloves, and cocaine residue.

Barlow was arrested and advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). Barlow agreed to speak with the officers and told one of them that the drugs in the residence belonged only to him and that he did not want his other family members to be charged. The officer responded that he would "accept [Barlow's] statement, but . . . would prefer to have him voluntarily write a handwritten statement claiming the items located inside of the house." The officer explained to Barlow that without a written statement from him, everyone who lived at the residence would be jointly charged with the drug offenses because the drugs had been found in the common areas of the residence. Barlow then wrote out a statement in which he admitted that the drugs and pistol found in the residence belonged only to him.

Barlow was indicted for several drug-related offenses relating to the drugs seized from the Sherbrooke Way residence, including trafficking in cocaine and possession of marijuana with intent to distribute. Barlow then filed a motion to suppress the items seized from the residence, contending that the search of the residence violated his Fourth Amendment rights in several respects.

At the hearing on his motion to suppress, Barlow testified that only his mother, stepfather, and brother lived at the Sherbrooke Way residence. Barlow denied currently living at the residence or having a bedroom there. Barlow further testified that he told the officer that the drugs and pistol found at the residence belonged to him only because the officer had threatened to arrest his other family members.

Later at trial, Barlow's girlfriend testified that Barlow currently lived with her and had not lived at the Sherbrooke Way residence for several years. Barlow's mother testified that she, her husband, and Barlow's brother lived at the residence, but that Barlow had moved out several years ago and no longer had a bedroom there. Barlow's mother also testified that the two purses where marijuana was found in the hall closet belonged to her, although she denied having any knowledge of the drugs found in them. Additionally, Barlow testified at trial that he currently lived with his girlfriend, had not lived at the Sherbrooke Way residence for five years, and had a

6

bedroom there when he was younger but "didn't have anything to do with that house anymore." Barlow also denied any knowledge of the drugs at the residence and claimed that he provided his written statement to the officer only because he had threatened to arrest his mother and brother.

The trial court denied Barlow's motion to suppress the evidence seized from the Sherbrooke Way residence on the ground that Barlow lacked standing to challenge the search. On appeal, Barlow challenges that ruling and contends that the trial court should have reached the merits of his motion to suppress. We are unpersuaded.

> A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. The burden is on the one claiming a violation of Fourth Amendment rights to demonstrate that he has standing to contest such violation, i.e., that he has a legitimate expectation of privacy in the premises searched.

(Punctuation and footnotes omitted.) *State v. Carter*, 305 Ga. App. 814, 816 (1) (701 SE2d 209) (2010). See *Jones v. State*, 320 Ga. App. 681, 685 (2) (740 SE2d 655) (2013). While "overnight guests in a private residence may have a legitimate expectation of privacy in that residence[,] [a] person who is merely present with the

7

consent of the householder[] has no such expectation." (Citations and punctuation omitted.) *Jones*, 320 Ga. App. at 685 (2). Where the evidence relevant to the issue of standing is in conflict, we will defer to the trial court's findings related to those disputed facts and "construe the evidence most favorably to support the trial court's ruling on the suppression motion." (Citation and punctuation omitted.) *Henderson v. State*, 211 Ga. App. 102, 103 (2) (438 SE2d 181) (1993).

Here, there was evidence to support the trial court's determination that Barlow did not have a legitimate expectation of privacy in the Sherbrooke Way residence. As previously noted, Barlow testified that only his mother, stepfather, and brother lived at the Sherbrooke Way residence, and he denied currently living at the residence or having a bedroom there. Barlow also disavowed his prior statements to the police in which he claimed ownership of the drugs and pistol found at the residence. Barlow's girlfriend and mother similarly testified that he did not currently live at the residence and had not done so for several years.

Based on this combined testimony introduced at the suppression hearing and at trial, the trial court was entitled to find that Barlow did not have a legitimate expectation of privacy in the Sherbrooke Way residence and thus was without standing to challenge the search. See *Carter*, 305 Ga. App. at 816-817 (1) (defendants

failed to show that they had standing to challenge search of rental house where drugs and drug paraphernalia were found, where there was no evidence that they lived there or were overnight guests); *Todd v. State*, 275 Ga. App. 459, 461 (1) (620 SE2d 666) (2005) (defendant lacked standing because he failed to demonstrate that he had a reasonable expectation of privacy in his friend's mobile home); *Atwater v. State*, 233 Ga. App. 339, 340-341 (2) (503 SE2d 919) (1998) (defendant failed to show that he had standing to challenge police officers' entry into room that his girlfriend was renting). See also *Sears v. State*, 268 Ga. 759, 763 (4) (493 SE2d 180) (1997) (noting that defendant would lack standing to challenge search of his mother's house if he no longer lived there and had no expectation of privacy in the house).[2] It follows that the trial court committed no error in denying Barlow's motion to suppress the drugs and pistol seized from the residence.

---

[2] Barlow had standing to challenge the search of his car, and he filed a separate motion to suppress the drugs and drug paraphernalia seized from the car, which the trial court denied. In his brief on appeal, Barlow suggests that the stop of his car was based on information provided to the police by the confidential informant. But the record reflects that the police officer stopped his car for failure to maintain its lane of travel in violation of OCGA § 40-6-48 (1). Thus, separate and apart from any information provided by the confidential informant, the officer had sufficient articulable suspicion to stop Barlow's car based solely on the traffic violation. See See *Steinberg v. State*, 286 Ga. App. 417, 418-419 (1) (650 SE2d 268) (2007) (failure to maintain lane provides officer with articulable suspicion to justify traffic stop).

2. Along with his motion to suppress the evidence seized at the Sherbrooke Way residence, Barlow moved to require the State to reveal the identity of the confidential informant who had supplied the information for the search warrant of the residence and any deals that had been reached with the informant. The trial court denied the motion without conducting an in-camera hearing after concluding that Barlow lacked standing to challenge the search warrant and that the confidential informant's testimony would not be material at trial. Barlow now challenges that ruling on appeal, but we discern no error by the trial court.

> The due process concept of fundamental fairness requires that the public interest in protecting the flow of information to law enforcement officials be balanced against the right of the accused to a full and fair opportunity to defend himself. Determining whether the State must reveal the identity of the confidential informant involves several steps. First, the defendant must make a showing (a) that the confidential informant allegedly participated in or witnessed the transaction and his testimony would be *material* to the defense on the issue of guilt or punishment; (b) that the informant's testimony would be *relevant* because testimony from witnesses for the prosecution and the defense will be in conflict; and (c) that the informant's testimony is *necessary* because he would be the only available witness who could amplify or contradict the testimony of these witnesses. If the defendant meets this threshold showing that the informant's testimony could be relevant, material, and necessary, the second step is for the trial court to conduct

an in-camera hearing to determine whether that initial showing is supported by the informant's actual testimony.

(Citations and punctuation omitted; emphasis in original.) *Hernandez v. State*, 308 Ga. App. 136, 137 (706 SE2d 627) (2011). Additionally, due process requires that the State reveal "any agreement, even an informal one, with a witness concerning criminal charges pending against that witness," *Williamson v. State*, 300 Ga. App. 538, 545 (4) (b) (685 SE2d 784) (2009), if the witness testifies at the defendant's trial. *Johnson v. State*, 275 Ga. 630, 632 (8) (570 SE2d 309) (2002); *Serrate v. State*, 268 Ga. App. 276, 280 (3) (b) (601 SE2d 766) (2004).

Here, the confidential informant's sole involvement in the case was providing an initial tip to the police officers and participating in the two controlled buys of cocaine from Barlow at the Sherbrooke Way residence. The officers then relied upon the tip and the controlled buys to obtain a search warrant for the residence. The State did not indict Barlow for the sales of cocaine to the informant. Rather, the State indicated Barlow solely for the drugs found in the residence upon the execution of the search warrant. The informant was not present during the execution of the search warrant and was not a witness to the offenses forming the basis for the present prosecution. Furthermore, as previously noted, Barlow was without standing to

11

challenge the search warrant obtained for the residence based on the information provided by the informant.

Under these circumstances, Barlow failed to make a threshold showing that the testimony of the confidential informant would be material or relevant to his defense on the issue of guilt or punishment. The trial court therefore did not err in declining to conduct an in-camera hearing and in refusing to require the State to reveal the identity of the informant. See *Reid v. State*, 321 Ga. App. 653, 656 (2) (742 SE2d 166) (2013); *Browner v. State*, 265 Ga. App. 788, 792 (2) (595 SE2d 610) (2004); *Turner v. State*, 247 Ga. App. 775, 777 (2) (544 SE2d 765) (2001). Furthermore, because the confidential informant did not testify at the suppression hearing or at trial, and because Barlow did not have standing to challenge the search warrant that was obtained based on the information supplied by the informant, the trial court likewise did not err in refusing to require the State to reveal any deal reached with the informant. See *Johnson*, 275 Ga. at 632 (8); *Serrate*, 268 Ga. App. at 280 (3) (b).

3. Barlow contends that the trial court erred in admitting his statement to the police that the drugs and pistol found in the Sherbrooke Way residence belonged to him without first conducting a hearing outside the presence of the jury and determining the voluntariness and admissibility of the statement. We disagree.

12

Barlow did not file a motion in limine or a request for a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964) to challenge the admissibility of his inculpatory statement to the police. Furthermore, defense counsel did not object to the introduction of Barlow's statement at trial. Rather, Barlow elected to testify on his own behalf, taking the position that the statement was coerced by the officer's threat to arrest his other family members if he did not provide a written statement. Under these circumstances, "due process does not require a voluntariness hearing absent some *contemporaneous* challenge to the use of the statement." (Citation and punctuation omitted; emphasis in original.) *Buckner v. State*, 321 Ga. App. 715, 716 (1) (742 SE2d 528) (2013). See *Brogdon v. State*, 255 Ga. 64, 67 (2) (335 SE2d 383) (1985); *Richardson v. State*, 265 Ga. App. 880, 882-883 (2) (595 SE2d 678) (2004). Having failed to make any contemporaneous challenge to his statement, Barlow has waived any error in its admission. See *Buckner*, 321 Ga. App. at 716 (1).

4. Barlow contends that his trial counsel rendered ineffective assistance. Again, we disagree.

> [T]o prevail on . . . a claim of the ineffective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80

13

LE2d 674) (1984), a criminal defendant must demonstrate that his counsel's performance was deficient and that, but for such deficiency, there is a reasonable probability that the outcome of the proceeding would have been different; on appeal, this Court is to accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but it is to independently apply the legal principles to the facts.

(Citation omitted.) *Johnson v. State*, 290 Ga. 382, 383 (2) (721 SE2d 851) (2012). If the defendant "fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Watson v. State*, 289 Ga. 39, 45 (12) (709 SE2d 2) (2011).

(a) Barlow argues that his trial counsel was ineffective in failing to request a *Jackson-Denno* hearing to test the voluntariness of the inculpatory statement he made to the police after his arrest. According to Barlow, his statement was coerced by the interviewing officer, who explained to him that because the drugs had been found in the common areas of the Sherbrooke Way residence, his family members would also be charged with possession of the drugs if he did not provide a written statement accepting sole responsibility. Given this alleged coercion, Barlow argues that if his trial counsel had made a contemporaneous objection to the admission of his

inculpatory statement, the trial court would have conducted a *Jackson-Denno* hearing and likely would have excluded the statement as involuntary. We are unpersuaded.

The officer's statement regarding the potential charging of other family members for the drug offenses fell into the category of a mere "truism" or "recounting of the facts" rather than an offer of benefit or threat of injury. See *Anderson v. State*, 224 Ga. App. 608, 610 (1) (481 SE2d 595) (1997); *Sampson v. State*, 165 Ga. App. 833, 835 (9) (303 SE2d 77) (1983); *Copeland v. State*, 162 Ga. App. 398, 400 (3) (291 SE2d 560) (1982). As such, Barlow has failed to show that his statement was involuntary and likely would have been excluded had a *Jackson-Denno* hearing been conducted. Consequently, he cannot meet the prejudice prong of the *Strickland* test. See *Bryant v. State*, 320 Ga. App. 838, 843 (4) (b) (740 SE2d 772) (2013).

Furthermore, the trial record reflects that the officer made the statement regarding other family members before Barlow provided his written statement to the police, but *after* Barlow had already verbally told the officers that the drugs and pistol in the residence belonged to him. Hence, even if Barlow's written inculpatory statement would have been excluded as involuntary upon a timely objection by trial counsel, the officer's testimony regarding his verbal inculpatory statement still would have been admitted and heard by the jury. For this additional reason, Barlow cannot

15

satisfy the prejudice prong of the *Strickland* test. See *Williams v. State*, 292 Ga. 844, 848 (3) (a) (742 SE2d 445) (2013) (defendant cannot establish prejudice resulting from trial counsel's failure to object to certain evidence, if the evidence would have been merely cumulative of other properly admitted evidence).

(b) Barlow also argues that his trial counsel was ineffective in failing to establish at the suppression hearing that he had a legitimate expectation of privacy in the Sherbrooke Way residence . Barlow's contention appears to be that his trial counsel should have elicited testimony from him at the suppression hearing that he continued to have a possessory interest in the residence after moving out because he still stored personal belongings in a room there.

However, at the hearing on the motion for new trial, Barlow's trial counsel testified that he had consulted with Barlow, and Barlow had informed him that he had moved out of the Sherbrooke Way residence but never shared with him that he had kept a room or otherwise retained any type of possessory interest in the residence after moving out. Barlow cannot show that his trial counsel was deficient in failing to explore a matter at the suppression hearing of which Barlow had failed to make him aware. See *Ellis v. State*, 316 Ga. App. 352, 361 (6) (729 SE2d 492) (2012).

Accordingly, Barlow has failed to satisfy the deficiency prong of the *Strickland* test and cannot succeed on his ineffectiveness claim. See id.

5. Barlow further contends that the trial court committed reversible error by refusing to allow him to attend the hearing on his motion for new trial so that he could testify and assist his counsel in presenting his claim of ineffective assistance. We disagree.

Generally, a criminal defendant does not have a constitutional right to be present at the hearing on his motion for new trial. See *Rosser v. State*, 284 Ga. 335, 336 (2) (667 SE2d 62) (2008); *Mantooth v. State*, 303 Ga. App. 330, 336 (2) (693 SE2d 587) (2010). "Rather, due process affords him the right to be present at such a hearing only if his presence would contribute to the fairness of the procedure." (Citation, punctuation, and footnote omitted.) *Mantooth*, 303 Ga. App. at 336 (2). See *Wallace v. State*, 294 Ga. App. 159, 161 (2) (669 SE2d 400) (2008). Moreover, a defendant must show that harm as well as error resulted from the exclusion of testimony at the new trial hearing. See *Ellis*, 316 Ga. App. at 361 (6).

In the present case, the trial court allowed defense counsel to make a proffer of what Barlow would testify to at the new trial hearing and how his testimony would support his claims of error. Defense counsel proffered that in support of his

ineffective assistance claim, Barlow would testify that he continued to have a possessory interest in the Sherbrooke Way residence after moving out because he still stored personal belongings in a room there. Defense counsel argued that Barlow's testimony would support his claim that his trial counsel was ineffective in failing to elicit testimony from him at the suppression hearing that would have shown that he continued to have a possessory interest in the residence even after having moved out, and thus would have shown that he had standing to challenge the search of the residence.

After hearing the proffer, the trial court concluded that Barlow's proffered testimony would simply contradict his own testimony at the suppression hearing and at trial that he no longer lived at the Sherbrooke Way residence and no longer had a room there. Because Barlow's testimony would have merely impeached his own prior testimony, the trial court concluded that Barlow's presence was unnecessary at the new trial hearing and denied Barlow's motion seeking a production order for his attendance.

Pretermitting whether the trial court erred in refusing to enter the production order for Barlow's attendance at the new trial hearing, we conclude that Barlow cannot show harm resulting from the denial. It is clear from the trial court's

statements at the new trial hearing that the court would not have found Barlow's testimony that he still stored belongings in a room at the Sherbrooke Way residence to be credible, in light of Barlow's prior testimony at the suppression hearing and at trial in which he repeatedly denied having any current connection with the residence. Furthermore, as noted supra in Division 4 (b), trial counsel testified at the new trial hearing that he had consulted with Barlow, and Barlow had informed him that he had moved out of the Sherbrooke Way residence but never shared with him that he had retained any type of possessory interest in the residence after moving out. Thus, irrespective of Barlow's proffered testimony, the trial court would have been entitled to believe his trial counsel's testimony and conclude that counsel was not deficient in failing to explore a matter at the suppression hearing of which Barlow had failed to make him aware. As such, Barlow's proffered testimony would not have affected the outcome of his ineffective assistance claim, and any error in the trial court's ruling was harmless. See *Ellis*, 316 Ga. App. at 361 (6).

*Judgment affirmed. Boggs and Branch, JJ., concur*.